[Civ. No. 4860.   Second Appellate District, Division One.—June 28, 1927.]

LOUIS HANDLEMAN, Appellant, v. J. R. PICKERILL et al., Respondents.

Adolph B. Rosenfield for Appellant.

Daly, Daly & Todd and John H. Burke for Respondents.

McLUCAS, J., *pro tem.*—Plaintiff, as sublessee, brought suit against the defendants for injunction from obstructing

a show-window and for damages. Judgment was rendered for defendants, and plaintiff brings this appeal.

On October 21, 1919, the defendants Pickerill and Scott entered into a written lease with California Chocolate Shops, letting the ground or street floor of a building to be erected by the lessors. The lease contained the following language: "excepting from said ground floor sufficient space at the west end thereof for an entrance to the upstairs of said building, and to the elevators to be constructed therein, said excepted space not to exceed in dimensions fifteen (15) feet frontage on West First street by fifty (50) feet in depth." The term of the lease was for fifteen years, commencing on the first day of April, 1920. On the date of execution, the lease in duplicate was deposited in escrow under instructions executed by the parties thereto, providing for the delivery of said copies of the lease to the respective parties when the escrow agent should be notified in writing by said parties that the plans and specifications for the building to be erected upon said premises had been agreed upon by both parties thereto. On December 12, 1919, the plans and specifications were duly approved by the parties to said lease, and the escrow agent was authorized and directed by written instructions to deliver to the respective parties copies of said lease. The said lease provided that "the lessee covenants and agrees, at its own cost and expense, to install in and upon the premises demised, that is to say, upon the ground floor of said building, all show windows, display fronts, . . . " It was further provided by said lease that "The lessors shall, at their own cost and expense, construct the entrance hereinabove provided for, and all of the equipment and interior thereof, and the lessee shall not be put to any expense whatsoever for or in connection with such entrance, the construction or equipment thereof." It was further provided that "The lessee shall not make or permit to be made any changes or alterations in or additions to said demised premises which affect an integral part of said building without first having obtained the written consent of the lessors thereto." The lease further provided: "The lessee is hereby expressly given and granted the right to sub-let the whole or any portion of the premises herein demised." It was further provided that "Each and all of the terms, covenants and

conditions of this lease shall be binding upon, and each and all of the benefits hereunder shall inure to the heirs, executors, administrators, successors and assigns of the respective parties hereto.'' The lease was delivered on the twelfth day of December, 1919, upon approval of the plans and specifications for the building. After the delivery of the lease the defendants Pickerill, Scott, and Welch formed a copartnership, and the defendants Pickerill and Scott assigned said lease to the said copartnership. Thereafter a building was constructed upon the leased premises by the copartnership. The California Chocolate Shops, on or about the eleventh day of October, 1920, entered into possession of the ground floor thereof as tenants of Pickerill, Scott, and Welch. Pursuant to the authority contained in said lease, the California Chocolate Shops, on or about the first day of August, 1920, entered into a written lease with the plaintiff for a storeroom, which was a part of the ground floor of the premises referred to in the first lease hereinabove mentioned. The term of the last-named lease was for five years, commencing on the first day of August, 1920. The California Chocolate Shop so constructed the said store front that the same consisted of a show-window, the side of which was improved with a pane of glass three feet in width and seven feet high, commencing eighteen inches above the floor of the entrance of said building, and the interior of said show-window could be readily seen through the said pane of glass by persons using the vestibule and entrance to said building. The court found, from evidence which was sufficient upon which to base its findings:

''That said show window was not so placed or constructed by plaintiff's said lessor, with the knowledge, consent, acquiesence or approval of the defendants Pickerill, Scott & Welch, or either of them, except that during the construction thereof, upon an objection being interposed by the said defendants Pickerill, Scott & Welch, it was agreed between said defendants and California Chocolate Shop that said window might be constructed so as to open into said lobby upon the express condition that the use of said window and the maintenance thereof should not in anywise interfere with the free and uninterrupted use of said lobby and entrance by said defendants Pickerill, Scott & Welch, in such manner

and to such extent for business purposes, or otherwise, as they might desire at any time. That said show window did not appear upon the plans and specifications for the construction of said building so approved by said defendants Pickerill, Scott & Welch, and California Chocolate Shops, and the construction, use and maintenance thereof was expressly conditioned upon the right of the defendants Pickerill, Scott & Welch to close said window, and to use said lobby and entrance in such manner as they might desire at any time during the term of the lease mentioned in paragraph II hereof.''

On October 31, 1920, plaintiff entered into possession of said storeroom and installed therein a shoe store, and in the conduct of his business used the said show-window to display his shoes for sale. Defendants Scott and Welch testified that prior to the thirty-first day of October, 1920, defendants had no notice or knowledge, either actual or constructive, of the execution of said lease between plaintiff and the California Chocolate Shops. On March 1, 1921, defendants Pickerill, Scott, and Welch leased to the defendant Charles Zimmerman a space in said entrance and vestibule, and defendant Zimmerman erected a booth in front of the westerly pane of said display window, by reason of which observation of plaintiff's show-window was prevented in part and merchandise therein could not be clearly seen from the west by persons using said entrance. Over the objection of plaintiff, two of the defendant's witnesses were permitted to testify as to conversations had between the original lessors and the agent for California Chocolate Shops, the original lessee. Also, the plans and specifications for the construction of the building were admitted in evidence over plaintiff's objection. These plans and specifications did not provide for any show-window between the storeroom and the entrance lobby, but showed a solid partition. During the course of construction, the general contractor employed by the original lessors, under instruction of the agent of the original lessee, California Chocolate Shops, left a space in this partition for a show-window. Defendant Welch testified that upon observing this opening in the partition he protested to the original lessee's agent, saying, ''You know, Mr. Swan, we have intended all the time to lease that for a cigar stand or some other business purpose,

and we don't want to have difficulty or trouble with your tenants''; and that Mr. Swan said, ''Well, you go ahead with this and any time that you get a tenant there that we can't make arrangements with to satisfy him, you can close us up''; and that Welch said, ''We would do just that very thing.'' This conversation was confirmed by the testimony of defendant Scott. It was testified that this conversation was held about ten days before plaintiff went into possession of the storeroom.

Appellant contends that the language contained in said lease, as follows, ''excepting from said ground floor sufficient space at the west end thereof for an entrance to the upstairs of said building, and to the elevators to be constructed therein,'' is to be construed as a reservation and not as an exception. Technically, the term ''excepting'' ''applies to something which constitutes a part of the thing described as granted and which would pass but for the excepting clause, the office of which is to exclude it from the thing described, and the title to the thing excepted remains in the grantor. The difference between the term 'excepting' and 'reserving' is so slight and shadowy that in common parlance they are used interchangeably, 'and the technical meaning will give way to the manifest intent, even though the technical term to the contrary be used.' (13 Cyc. 674.)'' (*Van Slyke* v. *Arrowhead etc. Power Co.,* 155 Cal. 675, 680 [102 Pac. 816]. See, also, *Pitcairn* v. *Harkness,* 10 Cal. App. 295 [101 Pac. 809].) However, for the purpose of the decision of this case, we do not find it necessary to determine whether this is an exception or a reservation, since even if the language be construed as a reservation and a covenant to use, the space exclusively for an entrance, it would not be enforceable by a subtenant against the original lessor, as no privity of contract or estate exists between the sublessee and the original lessor. (15 Cal. Jur., p. 766; *Ericksen* v. *Rhee,* 181 Cal. 562, 567 [185 Pac. 847]; *Bailey* v. *Richardson,* 66 Cal. 416, 421 [5 Pac. 910]; *City Investment Co.* v. *Pringle,* 73 Cal. App. 782, 788 [239 Pac. 302]; *Buttner* v. *Kasser,* 19 Cal. App. 755 [127 Pac. 811].) ''As between the original lessor and the sublessee there is no privity of contract or estate, and therefore the sublessee does not acquire, as a general rule, by virtue of the sublease merely, any right to enforce the

covenants or agreements of the lessor contained in the original lease.'' (16 Ruling Case Law, p. 877; *Audubon Hotel Co.* v. *Braunnig*, 120 La. 1089 [124 Am. St. Rep. 456, 46 South 33].) It follows, therefore, in this case that the plaintiff as a subtenant had no right of action as against the landlord to enforce any covenant or agreement that may have been contained in the original lease to maintain an entrance unobstructed.

Appellant argues that defendants are estopped by their conduct and silence from closing this window. A sublessee can in no event have any greater rights against the lessor than are given by the original lease to the lessee. (35 Corpus Juris, 1002.) It is the duty of a person contracting for a sublease to ascertain the provisions of the original lease, as a subtenant is charged with notice of the existence of the original lease and is bound by its terms and conditions. (15 Cal. Jur. 767; *Baranov* v. *Scudder*, 177 Cal. 458 [170 Pac. 1122]; *Georgeous* v. *Lewis*, 20 Cal. App. 255 [128 Pac. 768].) In the case at bar, while the original lease gave the right to the original lessee to construct the display windows, nothing was said about their location. Ordinarily, display windows are placed in the front of the storeroom, although such windows are often built facing entrances or lobbies on the side of the storeroom. Under the evidence showing the delivery of the original lease only after agreement of the parties on plans and specifications providing for a solid wall, with no display window fronting toward the entrance, and under further evidence showing that this display window was constructed under orders of the original lessee over the protest of the lessors and without their consent, the original lessee would have no right of action against the lessors for closing up the window. A sublessee can have no right superior to that of the lessee. The building was under process of construction when the subtenant executed his lease. Plaintiff must have known that the building was being erected under plans and specifications and he was bound by their provisions, as was the original lessee. We find nothing in the conduct of the defendants estopping them from closing this window in accordance with their declared intention.

Appellant in his reply brief states that the action is not based on any covenant in the lease to keep the window open,

but on the rights acquired in the window against all the world, including the landlord. But under the evidence the original lessee never acquired any right to keep the window open, and plaintiff as subtenant could acquire no rights superior to those of his landlord, the lessee.

Other points raised by appellant are necessarily disposed of by the foregoing conclusions.

It is ordered that the judgment be affirmed.

Houser, Acting P. J., and York, J., concurred.