The Hawley Corporation *v.* West Virginia Broad-
casting Corporation

(No. 8716)

Submitted April 19, 1938.   Decided May 17, 1938.

*McCamic & Clarke* and *Wesley R. Tinker, Jr.,* for plaintiff in error.

*Hall, Goodwin & Paul* and *C. Lee Spillers,* for defendant in error.

HATCHER, JUDGE:

Plaintiff, the Hawley Corporation, owns an office building; Hawley Building Corporation (not affiliated with plaintiff in any manner) had a long term lease on the building, and defendant, West Virginia Broadcasting Corporation, subleased a floor from the Building Corporation. The sublease, made August 24, 1933, was for a term of two years with the right of extension for a further period of five years, upon written notice by the subtenant not later than September 1, 1935. The tenant in chief violated the lease in several particulars and after an ouster proceeding had been instituted against it by plaintiff, surrendered the building, and defendant was so notified by plaintiff on October 30, 1934. The notice follows:

> "The Hawley Building Corporation has this day surrendered and delivered up possession of the premises, in the City of Wheeling, Ohio County, West Virginia, known as The Hawley

Building, to owner thereof The Hawley Corporation. Please be advised therefore that the rights of the Hawley Building Corporation are this day terminated in respect of said premises and for a determination of your future rights and liabilities you should communicate with The Hawley Corporation. A representative of The Hawley Corporation will doubtlessly see you within a day or so. The obligation of paying rent for the occupation of your premises will be to The Hawley Corporation and not to The Hawley Building Corporation."

A representative of plaintiff called on defendant's manager shortly after the notice was given. The call was described by the latter as "a general good will call;" but he disclosed that the representative "reiterated the facts contained in that letter (the notice)", and that he further said "we (defendant) were leasing from month to month, and that he considered we no longer had a lease." After the notice, defendant paid rent bills from plaintiff for the same monthly rentals as under the sublease, for ten consecutive months. August 13, 1935, plaintiff wrote defendant that its rights as sub-tenant had terminated when the rights of the tenant in chief did, and that "the situation should be straightened out", since defendant was then paying under no lease but merely for "occupancy of the premises from month to month." August 16, 1935, defendant replied in writing that it elected to renew its tenancy for the additional period of five years as permitted in its sub-lease, from the Building Corporation. August 19th, defendant wrote plaintiff that a discussion of any proposed new lease or any modification of the sublease would be useless. And on August 26th, defendant wrote plaintiff "we are of the opinion that we have the right to occupy the premises under the existing lease (sublease) * * * and we do not propose to vacate the premises until we have been ordered to do so by court of last resort."

This is an action of unlawful entry and detainer, commenced September 7, 1935. It was submitted to the

court in lieu of a jury. Judgment was entered for the defendant.

A sublease creates no privity of contract between the landlord and the sublessee. The latter's estate is but parcel of the lessee's estate, and is subject to the conditions imposed thereon by the principal lease. Its forfeiture terminates likewise the sublease. 35 C. J., Landlord and Tenant, sections 110, 251; 16 R. C. L., *idem,* section 381. Defendant does not question this law, but would maintain its subtenancy as follows:

1. In a letter written by plaintiff October 31, 1934, to the Building Corporation concerning an arrangement between them as to the leased premises, the addressee is referred to as having "voluntarily surrendered said premises." Upon that reference defendant takes the stand that its sublease was not affected at all by the surrender. The epistolary use of the word "voluntarily" was inadvertent. The admitted facts show that several causes for forfeiting the Building Corporation's lease had occurred, including non-payment of rent, and that the surrender was made not voluntarily, but under pressure. Hence defendant's stand has no substantial support. "It is true a tenant in chief cannot voluntarily surrender a possessory right that has accrued to him to the prejudice of a subtenant; but in the case at bar there was no voluntary surrender of a right, but a forfeiture for non-payment of the rent, which gave the landlord the right to annul the contract under the terms thereof, and the act of the lessee in assenting was not a surrender of any right, as the right to hold had been forfeited; but it was a mere surrender of possession, to which the owners were entitled." *Brock* v. *Desmond,* 154 Ala. 634, 45 So. 665, 129 Am. St. Rep. 71.

2. Defendant takes the further position that plaintiff's acceptance of the rent constituted a waiver of the forfeiture. Had the plaintiff knowingly received the rent *as payments under the sublease,* the acceptance would be taken at law as "an admission of the continuance of the subtenancy." *Cuschner* v. *Westlake,* 43 Wash. 690, 86

P. 948, 950. Accord: *Curry* v. *Bacharach Shops*, 271 Pa. 364, 117 A. 435; *Winestine* v. *Ziglatzki Co.*, 77 Conn. 404, 59 A. 496; *Peck & Co.* v. *Long* (Tex.), 68 S. W. (2d) 288. It is an ancient rule that acceptance of the rent accruing after a declared forfeiture, "nothing else being shown, constitutes a waiver." Annotation, 11 L. R. A. (N. S.) 831. Accord: Taylor, Landlord and Tenant (9th Ed.), section 497; Tiffany, *idem,* p. 1387, *et seq.* But, in the case at bar, *something else was shown,* namely, plaintiff's notice to defendant of October 30, 1934. The notice was never revoked nor reconsidered, and acceptance of the rent cannot be disassociated from it. Defendant was informed therein, unequivocally, that the rights of its lessor, the Building Corporation, had ended; that defendant would owe plaintiff rent—not under the sublease— but *for occupying the premises;* and that defendant's future rights thereto should be negotiated with plaintiff. Upon forfeiture of the principal lease, plaintiff had the exclusive right to affirm or disaffirm the sub-lease. *Curry* v. *Bacharach, supra.* The notice, in effect, informed defendant that the sublease was disaffirmed. Upon that disaffirmance, defendant had no right of occupancy except as plaintiff willed. That will, communicated by the notice, was that defendant could pay plaintiff rent for occupancy, until defendants "future rights and liabilities" should be determined. Two days after the notice, plaintiff sent defendant the first rent bill. The fact, alone, that this and subsequent bills charged the same monthly sum as defendant had paid under the sublease, is not inconsistent with a charge solely for occupation. This fact, alone, signifies only that this particular rent charge satisfied plaintiff. It is not reasonable that the adoption of this charge, alone, should be taken to establish plaintiff's voluntary abandonment of its position so recently asserted in the notice, or that defendant should have so inferred. *Manice* v. *Millen,* 26 Barb (N. Y.) 41, 46. The natural construction of the bill is that it was intended as a charge of rent for occupation, pursuant to the notice. Had defendant intended payment of the bill, not as for

occupation under the notice, but as for tenancy under the sublease, defendant should have so stated at the time. Defendant's silence implied acquiescence in the arrangement proposed by plaintiff, and foreclosed the position it would now assume. See generally, *Kimball* v. *Rowland*, 6 Gray (Mass.) 224, 226; *Cochran* v. *Trust Co.*, 70 Neb. 100, 96 N. W. 1051.

The facts of cases cited by defendant are materially different from those here. One illustration suffices. *Rhinelander* v. *Cammeyer*, 216 App. Div. 299, 214 N. Y. S. 284, is submitted as "on all fours" with this case. There the lessee, Cammeyer, voluntarily surrendered a subsisting lease, and guaranteed the landlord payment of rent by certain subtenants until expiration of their subleases. Thereupon, the landlord assumed the duty of supplying live steam at a certain pressure to Moritz Company, one of the subtenants, as Cammeyer had agreed to do in the sublease. The landlord also billed Moritz direct for the rent fixed by the sublease and was paid by Moritz direct for what time Moritz remained in the property. Moritz refused payment for what period remained of its term on the ground that the steam pressure had been insufficient. The landlord was informed of the insufficiency at the time, and promised improvement in the service, but did not make any. Under those circumstances, the court held that the landlord became the immediate landlord of Moritz by operation of law, and was responsible to Moritz for breach of the covenant in the sublease relating to steam. Instead of that case running on "all fours" with the case at bar, the two run alike, as we see them, on the one circumstance only—the quantum of rent remained the same after the original lease terminated as before. In that case, the surrender of the lease was voluntary; here, involuntary. There, the surrender did not affect the sublease; here, the sublease was terminated. There, the landlord accepted the sublease and assumed its burdens; here, the landlord rejected the sublease. The law applicable there is necessarily impertinent here.

Defendant finally contends that in any event this action cannot be maintained because no antecedent notice to quit was given. The tenancy proposed in the notice of October 30, 1934, was one at will. Under such a tenancy, notice to quit is not necessary. *Hinton Foundry Co.* v. *Lumber Co.*, 73 W. Va. 477, 80 S. E. 773. Even if the acts of plaintiff converted the tenancy into one from month to month, defendant's disclaimer of plaintiff as immediate landlord, and defendant's announcement that it would not vacate the premises until so ordered by the court, dispensed with notice. " * * * a tenant by setting his landlord at defiance, or doing any act disclaiming to hold of him as tenant, forfeits his right to any notice to quit, and may be proceeded against immediately." *Emerick* v. *Tavener*, 9 Gratt 220, 232, 58 Am. Dec. 217. Accord: *Appleton* v. *Ames*, 150 Mass. 34, 44, 22 N. E. 69, 5 L. R. A. 206; 35 C. J., *supra*, sec. 208; 16 R. C. L., *supra*, sec. 699.

The judgment is reversed and the case remanded.

*Reversed and remanded.*