MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD COMPANY, a foreign corporation, Plaintiff and Respondent,

v.

William DUVALL, also known as W. Duvall, Defendant and Appellant.

No. 7432.

Supreme Court of North Dakota.

Nov. 12, 1954.

Rehearing Denied Jan. 7, 1955.

J. K. Murray, Bismarck, for appellant.

Kelsch & Scanlon, Mandan, for respondent.

GRIMSON, Judge.

This is an action to determine adverse claims to parts of Lots 7 to 17 and of the east 20 feet of Lot 18, Block 29, Governor Pierce Addition to the city of Bismarck. Plaintiff brings the action to have a sublease covering a part of these premises claimed by the defendant declared null and void. Defendant asks that said sublease be adjudged valid. The district court found for the plaintiff. Defendant appeals, and asks for a trial de novo.

It is admitted that the plaintiff is the owner in fee of the real estate in question, a part of its right-of-way in Bismarck, N. Dak. On May 1, 1950, the plaintiff leased the said premises to one F. H. Schmitt "to have and to hold for the term of one year from the date hereof, and thereafter from year to year, * * *." The property was to be used for the purpose of constructing a building thereon to be "exclusively occupied and used by the lessee during the terms of this lease * * * for the conduct upon the premises in an active and substantial way of a bulk oil and filling station business, or such other kind of business as may be approved by the lessor." The lease further provided that:

"(16) This lease shall not be assigned or in any manner transferred by the lessee, voluntarily or involuntarily, by operation of law or otherwise, or the leased premises or buildings thereon sublet, used or occupied for the conduct of any business by any third person or corporation, or for any purpose other than herein authorized, without the written consent of the lessor."

In spite of these provisions of the lease Mr. Schmitt and the defendant without the

consent of the plaintiff entered into a sub-lease on July 2, 1950, whereby Schmitt leased to the defendant a part of this ground "for the purpose of constructing a cafe building 24 x 32 feet which is to be constructed by said first party (DuVall) and operated by him." This sublease was for a term of five years, with option of renewal by the defendant.

Soon thereafter the defendant commenced the construction of a building upon the premises involved.

As soon as the erection of this building came to the attention of Mr. Spielberger, the Bismarck general agent of the plaintiff, he, on August 8, 1950, wired the plaintiff asking whether the Schmitt Oil Co. Inc. had permission to erect a restaurant on this property. He received an answer the next day: "No permission ever granted Schmitt Oil Co., to establish a restaurant building on their leased site. Please see that any further construction is stopped and let me have a full report in the matter by first mail." On Aug. 9, 1950, Mr. Spielberger replies: "On receipt of your wire, I instructed Schmitt Oil Company to discontinue further construction of this building. Mr. Schmitt advised that he would finish the building and use it for an office or a warehouse if he could not use it as a restaurant." In reply on August 11, Mr. Spielberger received the following instruction: "It must be thoroughly understood that we will not allow operation of a restaurant on our property. If Mr. Schmitt wishes to convert this building into a warehouse or office purposes there will be no objection from this department."

Further correspondence and negotiations seem to have been had between the officers of plaintiff and Mr. Schmitt. No consent, however, was given by the plaintiff to the operation of a restaurant in this building erected by the defendant. The defendant himself had no negotiations with the plaintiff or its agents. He never asked plaintiff's consent to his operation of a cafe on the right-of-way. However, when the building was finished, he did open a cafe there which he operated up to the time of the trial of this case.

The evidence indicates that Mr. Schmitt got into some financial troubles. He assigned his lease to the Skelly Oil Co. His business was incorporated under the name of Schmitt Oil Co. Inc., of which Mr. W. W. Oliver became Secretary and Treasurer.

The plaintiff continued to insist the cafe be removed from the premises. Upon the assurance of Mr. Oliver that the cafe would be removed by January 1952, the plaintiff, on August 1, 1951, entered into a lease for a bulk oil and filling station on the premises with Schmitt Oil Co. Inc., on identically the same terms as the original lease to F. H. Schmitt. This lease, on August 28, 1951, was assigned to Skelly Oil Co., for security purposes. The business of the Schmitt Oil Co. Inc., was sold to the Skelly Oil Co., in April 1952. The plaintiff repeatedly insisted that the Schmitt Oil Co. Inc. and the Skelly Oil Co. remove the defendant's cafe business from the premises. The plaintiff refused to make a lease to the Skelly Oil Company for the premises in question until the restaurant business was removed.

Finally, in March 1952, the Schmitt Oil Co. Inc. served on the defendant a notice to quit and thereafter commenced an action against defendant to quiet title to the premises against his lease with Schmitt. Plaintiff tried to intervene in that action but was denied permission. That action was never tried. Thereupon this action was started Nov. 14, 1952.

Defendant contends that the lease between plaintiff and the Schmitt Oil Co. Inc. was still in force at the commencement of this action and that the plaintiff had no right to by-pass that lease and the Schmitt Oil Co. Inc. to bring this lawsuit directly against the defendant, the sublessee of the Schmitt Oil Co. Inc. He contends that the Schmitt Oil Co. Inc. lease would first have to be terminated and that that can not be done in an action to quiet title.

██ It is true that there is no privity of contract between the plaintiff, the original lessor of the premises, and the defendant sublessee. 32 Am.Jur., Landlord and Tenant, Sec. 423, p. 342. Whatever rights the de-

fendant obtained under his sublease are gained through the rights of the sublessor, F. H. Schmitt, under his lease from the plaintiff. Merchants' State Bank v. Sawyer Farmers' Cooperative Association, 47 N.D. 375, 182 N.W. 263, 14 A.L.R. 1353. But the termination or forfeiture of the original lease terminates the sublease. In Hawley Corp. v. West Virginia Broadcasting Corp., 120 W.Va. 184, 197 S.E. 628, 629, 118 A.L.R. 120, it is said:

"A sublease creates no privity of contract between the landlord and the sublessee. The latter's estate is but parcel of the lessee's estate, and is subject to the conditions imposed thereon by the principal lease. Its forfeiture terminates likewise the sublease." See also 32 Am.Jur., Landlord and Tenant, Sec. 422, p. 341; 51 C.J.S., Landlord and Tenant, § 48, page 578.

Both the leases from the plaintiff to Schmitt and the Schmitt Oil Co. Inc., were limited to the "term of one year from date hereof and thereafter from year to year, * * *". That is a definite term of one year with permission to renew such leases annually thereafter for an indeterminate time.

What was said by Judge Bronson in Northern Pacific Railroad Company v. Bismarck Commission Co., 41 N.D. 490, 171 N.W. 623, 624, applies in the instant case, to wit:

"As a tenancy from year to year, there existed a demise of the premises for the current year with the privilege of a recurrent period, unless terminated by notice as provided for in such cases, or as otherwise changed by statutory rule."

In Wadsworth v. Owens, 21 N.D. 255, 130 N.W. 932, 933, this court held that:

"The landlord may elect, when a tenant continues in possession after the expiration of his lease, to treat the tenant as a trespasser, or as holding under the lease of the former year." See also Merchants' State Bank v. Ruettell, 12 N.D. 519, 97 N.W. 853;

Kennedy v. City of New York, 196 N.Y. 19, 89 N.E. 360, 25 L.R.A.,N.S., 847; Haynes v. Aldrich, 133 N.Y. 287, 31 N.E. 94, 28 Am.St.Rep. 636; Mason v. Wierengo's Estate, 113 Mich. 151, 71 N.W. 489, 67 Am.St.Rep. 461.

In Smith v. Pritchett, 168 Md. 347, 178 A. 113, 115, 98 A.L.R. 212, the court said:

"While a tenancy from year to year may arise after the expiration of a tenancy for years, it is a new renting which begins upon the expiration of the tenancy for years, either because the landlord and tenant have so expressly agreed or the law has made a similar implication should the tenant continue in possession, without further contract for another year, by consent of his landlord."

In the instant case the lease to F. H. Schmitt was dated May 1, 1950, and the one year provision therein expired May 1, 1951. No renewal thereof was made. On the assurance of Mr. Oliver, Secretary-Treasurer of the Schmitt Oil Co. Inc., that the restaurant on the premises would be removed, plaintiff issued a lease to the Schmitt Oil Co. Inc., on Aug. 1, 1951, three months after the expiration of the Schmitt lease. That lease also was for one year expiring Aug. 1, 1952. On the assignment of that lease and the sale of the Schmitt Oil Co. Inc. business to the Skelly Oil Company in April 1952, a request was made to the plaintiff for a new lease to that company. No such lease was granted pending the removal of the defendant's restaurant business from the premises. The interruption of the continuity of the leases, the negotiations regarding a new lease and the conditions imposed for a new lease, overcame the presumption that the continued occupancy of the premises by the oil companies effected a renewal of the Schmitt Oil Co. Inc. lease. Foster v. National Tea Co., 74 N.D. 37, 19 N.W.2d 760.

The refusal of plaintiff to renew the lease for the oil station was caused by the breach by Schmitt of the clause in his lease from the plaintiff restricting the use of the premises to a bulk oil and service station. His sublease to the defendant provided for

operation of a restaurant on the premises. Section 47–1611 NDRC 1943 provides: "When real property is leased for a particular purpose, the lessee must not use it for any other purpose. If he violates the lease in this respect the lessor * * * may treat the contract as rescinded thereby." Plaintiff was attempting to have the restaurant removed rather than exercising his right of rescission and the termination of the lease for that breach.

The defendant claims, however, that the lease from plaintiff to Schmitt contains restrictions only against the assignment of the lease and against the subletting of the buildings on the premises. He claims that the subleasing of a portion of the lots for a building site was permissible under that provision of the lease so that there was no breach thereof. The provision in the lease is that "the leased premises or buildings thereon" shall not be sublet. That refers to the whole premises. The whole includes all parts of that whole. The provision against subletting the premises includes any part thereof. "The greater contains the less" is a maxim of jurisprudence. Section 31–1105(27) NDRC 1943. The defendant's interpretation of the original lease in that regard cannot be sustained.

During the negotiations for the ouster of defendant plaintiff received rental payments from Schmitt and the Schmitt Oil Co., Inc., on the promise that the restaurant would be removed. When that was not done and the plaintiff, in August 1952, learned the terms of the lease from Schmitt to defendant, it refused to accept any more payments of rent and refused to recognize the Schmitt Oil Co. Inc. as a tenant or to give a lease to the Skelly Oil Co. By these actions the plaintiff rescinded and terminated the Schmitt Oil Co. Inc. lease. By the termination thereof the sublease from Schmitt to the defendant was also terminated. Plaintiff served notice on the defendant on Aug. 14, 1952, that he was a trespasser on the premises described in his sublease.

At the commencement of this action there were no leases in effect covering the premises involved. The interests of plaintiff and defendant were adverse and could properly be determined in an action to quiet title. Udgaard v. Schindler, 75 N.D. 625, 31 N.W.2d 776.

"The right of the sublessee to the possession of the premises as against the original lessor terminates with the lease or term of the original lessee, and since a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the estate by the provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's non-performance of obligations imposed on him. Thus, if the original tenant has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee." 32 Am.Jur., Landlord and Tenant, Sec. 424, p. 344.

The defendant next claims that the plaintiff is estopped from asserting the expiration of the Schmitt leases or the invalidity of the sublease. In support of this he contends that the plaintiff with knowledge of the violation of its lease to Schmitt continued to accept rents from Schmitt and the Schmitt Oil Company, Inc., and that Schmitt and the Schmitt Oil Company, Inc. continued to accept rent from the defendant. He claims the plaintiff thereby not only waived all violations of the provisions in its lease to Schmitt, but that such waiver estopped the plaintiff from claiming the sublease invalid.

It is true that Schmitt paid the annual rent for the year during which the lease was in his name and also that the Schmitt Oil Company, Inc. paid the rent during the time its lease was in existence. These payments were received with the understanding that defendant's restaurant would be removed from the premises, and were refused as soon as plaintiff was fully informed of defendant's sublease. Defendant was informed that plaintiff insisted on the removal

of his restaurant. Defendant never paid any rent to plaintiff and on plaintiff's insistence the Schmitt Oil Co. Inc. refused to accept payments of rent from him after May 24, 1952. There is no evidence of any rent being paid by the Skelly Oil Company.

Clearly the evidence shows plaintiff's continued intention to rely on the provisions against subleasing for purposes other than as permitted by the lease to Schmitt and its insistence that that provision be observed.

In Meyer v. National Fire Insurance Co., 67 N.D. 77, 90, 269 N.W. 845, 852, this court cites with approval Sec. 792, Bishop on Contracts as follows:

" ' "Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistently with existence of the right, or his intention to rely upon it." ' " See also 51 C.J.S., Landlord and Tenant, § 34, page 546.

Waiver of the right to hold defendant's lease invalid cannot be inferred from acceptance of rent under the circumstances shown in the evidence. Payments of rent is the only evidence offered by defendant to sustain his claim of estoppel.

Furthermore, the evidence shows that the defendant's actions were not in any way induced by the fact that the plaintiff had accepted some payment of rent.

The defendant knew that Schmitt had only a lease of the premises. While he claims that he had not seen Schmitt's lease from the plaintiff he is presumed to know the conditions thereof. In Merchants' State Bank v. Sawyer Farmers' Cooperative Association, supra, 47 N.D. 375, 182 N.W. 266, this court held that "An assignee of the tenant is presumed to be acquainted with the terms and stipulations of the lease". In Brock v. Desmond & Co., 154 Ala. 634, 45 So. 665, it is held that: "A subtenant is chargeable with notice of the contents of the original lease." See also Cesar v. Virgin, 207 Ala. 148, 92 So. 406, 24 A.L.R. 715; Handleman v. Pickerill, 84

Cal.App. 214, 257 P. 890; 32 Am.Jur. Landlord and Tenant, Sec. 422, p. 341, 51 C.J.S., Landlord and Tenant, § 48, page 578.

Moreover, defendant had been actually told that the consent of the plaintiff was necessary for the validity of such a sublease. As soon as Schmitt's oil station was in operation he and the defendant consulted with Clifford Jansonius, Schmitt's attorney, about entering into a sublease and were informed by him that such a lease would not be valid without the consent of the plaintiff under the terms of Schmitt's lease and told them to see Mr. Spielberger, local agent of the plaintiff. Then when Mr. Oliver took charge of the Schmitt business in April 1951, he talked with the defendant and told him that the plaintiff would not lease the premises to Schmitt Oil Co. Inc. unless the restaurant was removed. The defendant admitted that Mr. Oliver told him that the plaintiff insisted on the removal of the restaurant from the premises.

In spite of the knowledge he obtained from Mr. Jansonius, defendant never asked the plaintiff or any of its agents for a consent to his operation of a restaurant upon the premises. Even though some of them were on the premises and conversed with him, defendant never disclosed his sublease. When the plaintiff's agents first found out about the proposed restaurant Schmitt seems to have taken the responsibility for the building and told the officers that if a restaurant could not be allowed in the building, he would use it for an office or for storage purposes. Clearly Mr. Schmitt knowingly violated his lease from the plaintiff and the evidence points to the conclusion that the defendant participated therein. Mr. Schmitt and the defendant apparently took a chance to get by without the consent of the plaintiff. Defendant was not induced to build and operate his restaurant by anything the plaintiff had done. Whatever detriment he suffers is of his own making. To constitute equitable estoppel there must have been an admission, statement, concealment or act by the plaintiff, inconsistent with the claim now asserted by him and an action by the defendant to his prejudice on the faith of such

admission, statement, concealment or act. Werner v. Werner, 74 N.D. 565, 23 N.W. 2d 757; Loff v. Gibbert, 39 N.D. 181, 166 N.W. 810; City of Williston v. Ludowese, 53 N.D. 797, 820, 208 N.W. 82; Waugh v. Williams, 342 Mo. 903, 119 S.W.2d 223. Defendant has not shown any estoppel against the plaintiff's claim that the sublease he obtained from Schmitt was invalid.

The district court found that the sublease granted the defendant by F. H. Schmitt was in all things null and void as against the plaintiff and quieted plaintiff's title to the premises against such sublease.

The plaintiff claimed no right, title or interest in the restaurant building erected by the defendant and the district court gave the defendant the right to remove said building without any damage to plaintiff's property.

The judgment of the district court is affirmed.

MORRIS, C. J., and BURKE, JOHNSON, and SATHRE, JJ., concur.