[Civ. No. 23361.   Second Dist., Div. Two.   Jan. 12, 1959.]

PETER DIMAS, Plaintiff and Appellant, v. ETTIE B. IRVINE, Defendant and Appellant.

Mac A. Propp for Plaintiff and Appellant.

Marcus C. Clark for Defendant and Appellant.

ASHBURN, J.—Defendant appeals from the judgment and attempts to appeal from an order denying her motion for new trial. Plaintiff takes a cross-appeal from the judgment. The court awarded plaintiff $9,786.50 as damages for wrongful eviction from premises held by him under a sublease from defendant Irvine.

Defendant had leased certain premises from James R. Palmer and Carrie Palmer for a term ending on December 31, 1971, at a rental of $200 a month. Defendant subleased a portion of the premises to plaintiff at the rate of $90 a month for a term beginning January 27, 1948, and ending on December 30, 1971, the sublessee to pay the taxes upon improvements placed upon the subleased parcel. Plaintiff was required by his lease to erect a building upon the premises, which would belong to the landowner at the end of the term. He erected a restaurant building at a cost of $7,000, also installed fixtures and restaurant equipment at an additional outlay of $12,000. In 1951 plaintiff subleased to Pete Buzas for a two-year term beginning November 16, 1951, at a rental of $250 a month for the building and all its equipment. On or about May 5, 1952, the Palmers served upon defendant as their lessee, and plaintiff as sublessee, a notice of default upon the main lease in that the rent due on May 1, 1952, in the sum of $200 was unpaid, and taxes amounting to $481.83 were delinquent. Said notice required payment of said items within 30 days, failing which the lease would be terminated and the landlord would reenter the premises. Mrs. Irvine made no payments and the lease was terminated, the Palmers taking possession on June 3, 1952. After receiving his notice of default plaintiff went to see defendant several times and offered to take over any deal she could make with Palmer. But she was trying to get a lower rent and no deal with Palmer was ever made. When plaintiff offered her his rent for May defendant said, "I am giving up my lease"; "I am defaulting in my lease"; and "I can't take this check because I am defaulting in my lease." Plaintiff also went to see Mr. Palmer who said that Mrs. Irvine had defaulted and if the sums due were not paid by June 3rd, "you all have to move out." After Palmer had sent plaintiff to see his attorney an arrangement was made by which plaintiff rented from Palmer

on a month to month basis the same portion of the premises which he had held under the sublease, but at a rental of $110 a month; this lasted until September when Buzas, who was in possession, was required to surrender the premises. Plaintiff then moved his fixtures and restaurant equipment to another location, but the building had reverted to the Palmers and remained on the premises.

Defendant plainly defaulted upon her obligation to plaintiff as her sublessee, and counsel are agreed that plaintiff's rerenting for a period of four months from the Palmers on a different basis did not and could not restore his sublease or the right to possession thereunder. (See 30 Cal.Jur.2d, § 132, p. 275; *Wheelock* v. *Warschauer*, 34 Cal. 265, 269; *Ohsaki* v. *Ahern*, 61 Cal.App. 787, 790 [215 P. 714]; *Hawley Corp.* v. *West Virginia Broadcasting Corp.*, 120 W.Va. 184 [197 S.E. 628, 629-630, 118 A.L.R. 120].) Plaintiff was not required to await physical eviction, nor did he waive his right to damages by accepting a new tenancy under the owner of the land. In the Ohsaki case, *supra*, the court said at page 790: "Under such circumstances one who has received possession of property under a contract from a person who has no title or who has subsequently lost the same may yield it to the true owner without waiting for the latter to take it forcibly or by legal proceedings. (*Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345, 354 [45 P. 680].)"

The main question presented on appeal is the measure of defendant's liability. Indeed, all arguments presented by both sides converge upon this central controversy. Defendant says the damages awarded are excessive and even speculative. Plaintiff says they are inadequate and opposed to uncontradicted expert evidence upon the subject.

The trial judge rightly criticized counsel for both sides because of inadequacy of their presentation, reopened the case and heard additional evidence, submitted the matter and later awarded $9,786.50 without any explanation of the method of arriving at that amount. Counsel for each side asserts inability to explain the court's figure. We find ourselves in the same position but we are able to determine whether it is within a permissible range of probabilities. First we approach the matter from the standpoint of defendant's claim that the damages are excessive.

Buzas had a sublease from plaintiff extending two years from November 16, 1951, at $250 a month, thus yielding a net sum of $160 a month less taxes of about $10 a month to

plaintiff. At the time of eviction on June 3, 1952, his unexpired term covered a period of one year and five months. Plaintiff thus lost $150 a month for 17 months, or $2,550; for four months he had to pay $110 (rather than $90) to Palmer and thus lost an additional $80. He had made an initial rent deposit to defendant and $275 of that amount remains owing to him; it cost him $275 to move his fixtures. The total of these items is $3,180. In addition thereto he lost his building which, according to his testimony, had cost him $7,000; it was about four years old and the record is silent as to the amount of depreciation it had suffered. Treating it as worth $7,000 when plaintiff was evicted, his damages aggregated $10,180 or thereabouts. Therefore, it cannot be said that the award of $9,786.50 was excessive or speculative.

Cross-appellant Dimas bases his claim of inadequate damages upon the testimony of one witness who assumed as an expert to value the lease through capitalization of net income, using $150 a month as the basis. He assumed that this profit would continue for the balance of plaintiff's lease term, or 19 years and 3½ months, although Buzas' tenancy at $250 a month was for two years only, included the use of restaurant fixtures and equipment as well as land and building, and the Palmers exacted only $110 a month for the use of the premises for the four months following the eviction. The result of this expert's computation was $19,873, which included $1,000 gratuitously assessed by the witness as a penalty for termination. There is no basis in the record for estimating the rental value of the premises some five, ten, fifteen or nineteen years hence. True, there was no witness that swore to the contrary, but that does not establish, as cross-appellant claims, an obligation to accept the expert's testimony regardless of its credibility. The testimony of an expert witness is worth no more than the reasons he gives for it. (*Gazzera* v. *City & County of San Francisco*, 70 Cal.App. 2d 833, 838 [161 P.2d 806]; *People* v. *Martin*, 87 Cal.App.2d 581, 584 [197 P.2d 379]; 19 Cal.Jur.2d, § 309, at p. 39. See also *People* v. *Cole*, 47 Cal.2d 99, 105 [301 P.2d 854].) When he bases his opinion upon hypotheses which are obviously unsupported by the evidence no trier of facts is duty bound to accept it. Such is the situation at bar.

The judgment is affirmed and the attempted appeal from order denying new trial is dismissed.

Fox, P. J., and Herndon, J., concurred.