## 58817. GULDEN v. NEWBERRY WRECKER SERVICE, INC.

BIRDSONG, Judge.

The plaintiff corporation below, Newberry Wrecker Service ("Newberry"), who is appellee in this appeal, leased from Sydney S. Gulden certain property on Milton Street in Atlanta. The lease term was for five years, to commence on September 1, 1970, and terminate October 31, 1975. The lease document was a standard form, referring to Gulden as "Lessor" and to Newberry as "Lessee," and obligating Newberry to pay $850 per month for the lease privilege. In fact, however, Gulden did not own the property but had leased it from the Atlanta & West Point Railroad for a period, including extensions, from August 5, 1957 until July 31, 1972.

A few months after executing the sublease in July, 1971, Mr. Newberry sold his interest in the appellee corporation to a Mr. Brooks and two others; in September, 1971, Mr. Brooks, president of the corporation, called an executive of the Atlanta & West Point Railroad and, according to that executive's memorandum of the conversation, Brooks indicated that he knew Gulden's own lease with the railroad would terminate in 1972. Brooks discussed with the executive terms by which appellee would lease the property directly from the railroad when Gulden's lease with the railroad expired, and stated that he intended to sue Gulden for the additional rent appellee would have to pay to the railroad during the remainder of the five-year sublease. However, no such arrangement was ever entered into between appellee and the railroad. Shortly thereafter, Brooks died and a Mr. Courdin became the appellee's corporate president. It is alleged that thereafter Courdin, as manager of appellee's operation, made considerable improvement to the property on the basis of the five-year lease with Gulden. There is no evidence or indication that Mr. Newberry, Brooks, or Courdin ever confronted Gulden with the lease problem or discrepancy. There is no indication how or when Mr. Brooks first became aware that the sublease with Gulden extended three years past Gulden's own lease term. In fact, there is no indication that Mr.

Newberry did not know of the lease between Gulden and Atlanta & West Point Railroad when he executed his lease with Gulden.

On July 31, 1972, Gulden's lease with the railroad expired, but no action was taken by anyone and appellee continued to occupy the property under the sublease and pay rent to Gulden. In October, 1973, the railroad notified Gulden, who in turn notified appellee, that the railroad sought possession of the property. The appellee vacated the property four months later in February, 1974, with a year and eight months remaining of the sublease with Gulden.

Newberry Wrecker Service, Inc. brought action against Gulden for breach of contract, in that Gulden "denied to the plaintiff the right to peaceably hold, occupy and enjoy the use of said property under the terms and provisions of said lease for the full term thereof." Gulden answered saying it was his intention to sublease the property for the duration of his lease with the railroad, that the plaintiff was well aware of the terms of that lease and that it was the intention of both parties that the sublease expire in 1972, and that the execution of the sublease with a later termination date thereon was a mutual mistake or bona fide error. He further answered that the 1975 date was fraudulently placed in the sublease document by the plaintiff and that plaintiff should be estopped by laches and its prior knowledge of the terms of the railroad-Gulden lease. The trial court granted a directed verdict in favor of plaintiff Newberry Wrecker Service on the issue of liability and submitted the issue of damages to the jury, which returned a verdict for $20,000. *Held:*

It was error to grant a directed verdict to the plaintiff-appellee on the issue of liability of Gulden for breach of the contract.

Gulden testified that in discussing the lease terms in 1970, he told Mr. Newberry he would rent the property to the wrecking company under the same terms as his lease with the railroad, but that he never told Mr. Newberry what were the terms of his lease with the railroad. Gulden stated that Mr. Newberry never asked, and they did not discuss, the fact that Gulden's own lease terminated in 1972, but that he told Mr. Newberry he could not permit the lease of the land any further than he had with the railroad. We construe this testimony against Gulden, because it is inconclusive and ambiguous. *Johnson v. Curenton,* 127 Ga. App. 687 (195 SE2d 279). Furthermore, Gulden cannot maintain that his execution of the sublease with terms ending in 1975 was a mistake, or error, or oversight on his part, because he is held to have read the document and to have known what he signed and what he conveyed. *McCullough v. Kirby,* 204 Ga. 738, 744-747 (51 SE2d 812). Gulden

is stuck with the fact that he knowingly contracted to give what he did not have and had no right to give: a sublease extending three years past the terms of his own lease.

But if appellant Gulden contracted to give what he did not have, the appellee Newberry Wrecker Service agreed to accept it, and for this acceptance there is shown nothing that will serve as a legal excuse. A sublessee is bound by the rights of his lessor; he is charged with notice by implication of every fact affecting the rights of his lessor, and discoverable by examination of his lessor's lease with the owner; and of every fact with which he by reasonable diligence ought to have become acquainted. *Rosen v. Wolff,* 152 Ga. 578, 586 (110 SE 877). Upon due inquiry the appellee could have ascertained the pre-eminent facts that the lease rights of its lessor Gulden expired in 1972, and that Gulden had no right to grant a lease thereafter, nor in fact any right to sublease at all without the written consent of the railroad (*Rosen,* supra, p. 587). While Gulden stated he did not show Mr. Newberry his lease, or advise Mr. Newberry of its terms, neither did Mr. Newberry ask to see it or make any inquiry (*Rosen,* supra). It is not contended, nor is there any evidence, that Mr. Newberry was unaware that Gulden was a tenant only and not the owner. It is the duty of contracting parties to inform themselves with reference to the subject matter about which they desire to contract; if they fail to do so and a mistake is made owing to their own ignorance and failure to inform themselves, then any injury results from their own conduct. *Prince v. Friedman,* 202 Ga. 136, 140 (42 SE2d 434). Ignorance of a fact due to negligence is equivalent to knowledge in fixing the rights of parties. Code § 37-116; *Robertson v. Panlos,* 208 Ga. 116, 120 (65 SE2d 400). On the authority of *Rosen,* supra, the appellee is held to have had notice by implication that Gulden's own lease terminated in 1972 and that Gulden had no right to lease the appellee the property after 1972, and that his agreement to do so was worthless. At least so much of the contract to lease past July 31, 1972, was without consideration, and was nudum pactum; and therefore we think it somewhat imprecise to speak in terms of a binding contract or of Gulden's having breached it. See 17 AmJur2d 851, Contracts, § 403. Moreover, we think it is inconsistent that the appellee at once admits Gulden's lease terminated in 1972, but nevertheless contends there was a contract which Gulden breached, in point of fact, by denying to appellee what appellee admits Gulden never had the right to give and what appellee could have had no right to expect. The agreement was impossible to perform under the rights and obligations then existing, and as they continued to exist. We

hold that where impossibility of performance is, in point of law, known to both parties at the time of making the agreement, there can be no intention of performing it on the one side and no expectation of its being performed on the other, and therefore one of the essentials of a valid promise, namely a legal consideration, is wanting. Runyan v. Culver, 168 Ky. 45, 51 (181 SW 640); 17A CJS 606, Contracts, § 462.

Under the view we take of the facts of this case, as nearly as we can discover them, the parties performed so much of their agreement as could have formed a valid contract; and as for the remainder which could not be performed, there is no remedy for the plaintiff, who by implication of law had notice and knowledge of the impossibility at the inception of the agreement. The appellee does not allege or urge any fraud, misrepresentation or deceit on Gulden's part, and therefore can have no more relief in law than it could in equity, owing to its own failure to inquire into what was most vital to its interests, and its own negligence in not ascertaining facts which it could have ascertained by only the slightest diligence. *Jackson v. Brown,* 209 Ga. 78, 79 (70 SE2d 756).

What we have said is sufficient to determine the matter, even without considering the additional damnum, the fact that the appellee discovered the impossibility of performance in 1971, and did nothing to assert a breach or mitigate its damages. It would be offensive to any principle of equity or law to permit Newberry to claim a breach under an agreement which Newberry should have known at its inception, and did in fact know for three years, was impossible to perform. Holding as we do that the trial court erred in directing a verdict of liability against the defendant, we find it unnecessary to consider the remaining enumerations of error which deal with the question of damages. See *Maloy v. Dixon,* 127 Ga. App. 151, 156 (193 SE2d 19) fn. 2.

*Judgment reversed. Quillian, P. J., concurs. Smith, J., concurs specially.*

ARGUED NOVEMBER 19, 1980 — DECIDED MARCH 11, 1980 — REHEARING DENIED MARCH 26, 1980 — ▮▮▮▮▮▮▮▮

*Jerry L. Sims,* for appellant.
*Edward Andrews,* for appellee.

SMITH, Judge, concurring specially.
While I agree with the judgment of the majority reversing the directed verdict for appellee, I believe the majority goes far beyond

what is necessary to a resolution of this case.

The majority has correctly determined that the record in this case fails to establish "an admission of liability or an indisputable fact situation that clearly establishes liability," either of which would support the trial court's grant of a directed verdict for appellee on the issue of liability. *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448, 451 (224 SE2d 25) (1976). Factual issues such as appellee's knowledge of the terms of appellant's lease with the railroad frame important jury questions which bear directly on the question of liability in this case. A directed verdict for appellee was therefore inappropriate.

Unfortunately, the majority has gone far beyond this dispositive determination and has assumed the role of factfinder in the instant appeal. In this capacity the majority determines that "[U]pon due inquiry the appellee could have ascertained the pre-eminent facts that the lease rights of its lessor Gulden expired in 1972, and that Gulden had no right to grant a lease thereafter, nor in fact any right to sublease at all without the written consent of the railroad [Gulden's lessor] . . ." Citing the case of *Rosen v. Wolff*, 152 Ga. 578 (110 SE 877) (1921) as authority for its position, the majority carries its analysis one step further and declares that "the appellee is held to have had *notice by implication* that Gulden's own lease terminated in 1972 and that Gulden had no right to lease the appellee the property after 1972, and that his agreement to do so was worthless." (Emphasis supplied.)

I reject the notion that the case of *Rosen v. Wolff*, supra, imposes upon each and every would-be lessee an absolute duty to exhaustively investigate the possible existence of a primary lease. The *Rosen* decision addresses the question of whether a sublessee is bound by a restrictive covenant contained in a lease of which the sublessee has notice. While it may be argued that the holding in *Rosen* applies to the instant case by analogy, the concept of "notice by implication" must not be extended so as to attribute constructive knowledge of the terms of a primary lease to a sublessee or assignee as a matter of law where it appears from the record that the lessee under the primary lease knowingly withheld the fact of the existence of that lease from the sublessee or assignee.

Moreover, I do not believe appellee would *necessarily* be barred from recovering damages even if the finder of fact determined that appellee had *actual* knowledge of the expiration date of appellant's lease prior to the signing of appellee's lease agreement. The reasonableness of appellee's reliance on appellant's representations concerning the duration of appellee's leasehold

would remain a major issue. "[A] lessee who sublets for a term longer than his own is liable to the sublessee for the damages resulting from his eviction before the expiration of the sublease; and this liability is not affected by the fact that the sublessee knows that the head lease will expire before the sublease, where he relies on the lessee's representations that he may occupy the premises for the full term of the sublease." 5 CJS 150, Landlord & Tenant, § 49. See also Frankfurt v. Decker, 180 SW2d 985 (Tex. Civ. App.) (1944).

The majority clearly implied in its decision that the appellee in this case has no cause of action against the appellant regardless of whether appellee reasonably relied upon appellant's alleged misrepresentations as to the duration of the leasehold interest which he conveyed to appellee. To the extent that the majority relies on the case of *Rosen v. Wolff,* supra, and the concept of "notice by implication" to find that "there is no remedy for the plaintiff [appellee]," I am compelled to state that I disagree.