OCCIDENTAL SAVINGS AND LOAN ASSOCIATION, A CORPORATION, APPELLANT, V. BELL FEDERAL CREDIT UNION, A CORPORATION, APPELLEE.

357 N.W.2d 198

Filed October 26, 1984.    No. 83-740.

Robert M. Zuber of Zuber & Ginsburg, for appellant.

Donald A. Roberts of Lustgarten & Roberts, P.C., for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, and Shanahan, JJ., and Colwell, D.J., Retired.

Caporale, J.

Occidental Savings and Loan Association, a corporation, plaintiff sublessee, appeals from the trial court's declaration that the sublessor and defendant-appellee, Bell Federal Credit Union, a corporation, incurred no liability by its inability to grant renewals to Occidental as provided in the sublease. We reverse and remand for further proceedings.

Bell, as lessee through its predecessor, and Masonic Templecraft of Omaha, as lessor, entered into a lease of a portion of a building on October 1, 1971, for the 10-year period beginning March 1, 1972, and ending February 28, 1982, with an option in Bell to renew the lease for two additional 5-year terms. This lease further provided that Templecraft's sale of the building would operate to cancel Bell's options to renew. On February 15, 1977, Occidental, as lessee, and Bell, as lessor, entered into an agreement entitled "LEASE," wherein Occidental subleased from Bell the premises Bell had leased from Templecraft. This Bell-Occidental agreement, or sublease, made no reference to the Templecraft-Bell lease. The original term of the Bell-Occidental sublease was from March 1, 1977, through February 28, 1982, with an option in Occidental to renew, without any limitation or condition, for two additional 5-year terms. In this sublease Bell represented, as discussed in more detail later, that it had obtained Templecraft's permission "to enter into this lease." On December 22, 1981, Occidental undertook to extend the sublease for the first of the two renewal periods. On January 7, 1982, Bell informed Occidental that Templecraft's sale of the building eliminated Occidental's renewal rights. On January 13, 1983, Occidental undertook to exercise the second renewal period.

The inability of Bell to grant the renewals requested by Occidental resulted in this declaratory judgment action by Occidental against Bell and others not involved in this appeal, wherein Occidental sought a declaration that the renewal

provisions of the Bell-Occidental sublease were binding upon Bell, and for monetary damages.

Following a bench trial, the district court specifically found that although the Bell-Occidental sublease made no reference to the underlying Templecraft-Bell lease, Occidental knew that it was in fact a sublessee and knew, or should have known, that sale of the building by Templecraft canceled the renewal options granted Bell by the underlying Templecraft-Bell lease. Accordingly, the district court dismissed Occidental's petition.

The two questions raised by Occidental's three assignments of error are (1) whether the evidence supports the district court's findings of fact and (2) whether the findings support the judgment.

We begin our analysis by setting forth the scope of our review. Although this suit is cast in the form of a declaratory judgment action, it is in point of fact a suit for breach of contract. Specifically, it is an action for damages occasioned by Bell's alleged breach of its sublease obligations to Occidental. That being so, it is an action at law. This court treats the determination of factual issues in a declaratory judgment action, which would otherwise be an action at law and tried without a jury, in the same manner as any other action at law; accordingly, the findings of the trial court have the effect of a jury verdict and will not be set aside unless clearly wrong. *Quinn v. Godfather's Investments*, 213 Neb. 665, 330 N.W.2d 921 (1983); *Roth v. School Dist. of Scottsbluff*, 213 Neb. 545, 330 N.W.2d 488 (1983).

The trial court's finding that Occidental knew it was a sublessee is clearly correct. It is established by Occidental's September 28, 1976, letter to Bell proposing to "sub-lease" from Bell and the testimony of Occidental's then president and then vice president that they knew at the relevant times that Bell was leasing the subject premises from Templecraft.

We find no evidence that Occidental actually knew of the cancellation provision of the underlying Templecraft-Bell lease. Neither does the evidence support the finding that Occidental should have known of that provision. The trial court's finding that Occidental knew or should have known of the cancellation provision is therefore clearly wrong.

Although Occidental's then president and vice president admitted that all questions asked by them were answered by Bell and that Bell provided all information sought by Occidental, they both testified they never saw the Templecraft-Bell lease. The substance of the testimony of Bell's representatives is only that the Templecraft-Bell lease was available to Occidental. The evidence further establishes that Bell did not wish Occidental to have any contact with Templecraft and therefore represented in the Bell-Occidental sublease that Bell had "obtained from Masonic Templecraft of Omaha, Nebraska, a Nebraska corporation, permission to enter into this lease agreement with the Lessee herein." It would certainly be reasonable for Occidental to read the foregoing language to mean that Templecraft consented to granting Occidental renewal options without any limitation or condition. Any argument that the representation meant only that Templecraft consented to the renewals under the same limitation and condition which Templecraft imposed on Bell would be answered by the rule that any ambiguity in a lease will be construed against the party whose language was used; in this case, Bell. *Sacher v. Taco Grande of Iowa, Inc.*, 210 Neb. 122, 313 N.W.2d 257 (1981).

Bell argues, however, that the rule is well established that a sublessee is bound by, and limited to, the rights of his sublessor. Therefore, it urges, Occidental could acquire no more from Bell than Bell acquired from Templecraft. In support of that argument, it cites *Century Paramount Hotel v. Rock Land Corp.*, 68 Misc. 2d 603, 327 N.Y.S.2d 695 (1971), *Minneapolis, St. Paul & Sault Ste. Marie R. Co. v. Duvall*, 67 N.W.2d 593 (N.D. 1954), *Merchants' State Bank v. Sawyer Farmers' Co-op. Asso.*, 47 N.D. 375, 182 N.W. 263 (1921), *Brock v. Desmond & Co., et al.*, 154 Ala. 634, 45 So. 665 (1908), *Cesar v. Virgin*, 207 Ala. 148, 92 So. 406 (1921), and *Handleman v. Pickerill*, 84 Cal. App. 214, 257 P. 890 (1927), which hold that a sublessee can in no event have greater rights against the original lessor than were given by the original lessor to the original lessee. Those cases are obviously inapposite, for in this case we are adjudicating Occidental's rights against Bell, the original lessee and present sublessor, not the rights of Occidental against the original lessor, Templecraft.

We recognize that *Gulden v. Newberry Wrecker Service*, 154 Ga. App. 130, 267 S.E.2d 763 (1980), *cert. denied* May 7, 1980, applying the rule previously announced by the Georgia Supreme Court in *Rosen v. Wolff*, 152 Ga. 578, 110 S.E. 877 (1922), holds that a sublessee is charged with notice by implication of every fact affecting the rights of his sublessor and discoverable by an examination of the sublessor's lease with the owner, and of every fact with which he, by reasonable diligence, ought to have become acquainted. As urged by Bell, *Gulden* does, in effect, hold that once one becomes aware of the fact he is a sublessee, he has the obligation to read his sublessor's lease with the original lessor and become aware of the limits of the sublessor's rights, and is bound thereby. We, however, reject that rule as unsound.

This case presents nothing more than a contract action in which Bell promised more than it could deliver and must now suffer the consequences. As we said in *University Products of Nebraska, Inc. v. Jensen*, 194 Neb. 700, 235 N.W.2d 229 (1975), if one by contract imposes a duty upon himself, he must substantially comply with that undertaking. In *University Products* we held that the bankruptcy of the seller's franchisor did not excuse the seller's unconditional promise to sell its photography business, notwithstanding the fact that its promise included the obligation to assign its franchise. In the context of this case the *University Products* rationale translates into the rule that a sublessor who undertakes to grant renewal options he cannot deliver becomes, by reason of that breach of contract, liable in damages. This is the rule applied in *Nybor Corp. v. Restaurants, Inc.*, 29 N.C. App. 642, 225 S.E.2d 609 (1976), which held that a sublessor which undertook to demise more land and for a longer term than under its own lease would be liable in damages to its sublessee. Bell undertook to grant renewals which it cannot deliver and must therefore respond in damages if any. Although the record includes evidence on that issue, this determination must be left to the district court.

In view of the foregoing analysis and determination, it is necessary that we reverse the judgment of the trial court and remand the cause for further proceedings to determine the amount of Occidental's damage.

REVERSED AND REMANDED WITH DIRECTIONS.