THOMAS CLARK *et al.,* plaintiffs in error, *vs.* HERRING & MOCK, defendants in error.

1. The granting or dissolving of an injunction, on the facts, is largely in the discretion of the Chancellor, and this Court will not control that discretion unless it has been abused.
2. An estate for years may be bought and sold as other real estate, even against the consent of the grantor, if there be nothing in the deed to prevent it.
3. A tenant for a year, under a contract of rent, stands in the shoes of his landlord, and, in general, is not a purchaser, entitled to notice of equities existing against his landlord, in favor of third persons.

Equity practice. Lease. Restraint of trade. Landlord and tenant. Before Judge STROZIER. Dougherty county. Chambers. 1871.

The bill of Herring & Mock to enjoin Clark from keeping a bar-room in a hotel, made this case: On the 20th of March, 1867, A. J. Towns and one Kemp made a contract, in writing, whereby it was agreed that Kemp should have the east cellar, and another room, in the new brick hotel, then in process of completion by said Towns, in Albany, " to be kept by said Kemp, as a first-class bar-room, as an adjunct to said hotel; to hold it to himself and his heirs and assigns, upon condition that they are kept in good order, as a first-class bar-room, for and during the term of five years from the day the same is completed ;" and Kemp agrees " that he will keep, or cause to be kept in said cellar room, a first-class bar," etc., in consideration of $3,000 00. Under this lease, Kemp took possession on the 1st of May, 1867; he kept such bar-room in person till October, 1869, and then assigned his lease to one Camp, who there kept such bar-room till the 23d of May, 1870, and then assigned it to Herring & Mock, who are there now keeping such bar-room. In 1869, A. J. Towns died. R. Towns and M. J. Towns became his administrators. In 1870 they rented the hotel to B. A. Collier for one year, from the 1st of October, 1870. And Collier has rented a room in said hotel to Clark, for the purpose of having him open a bar-room therein. Clark ought not to be allowed so to do, because it was a part of the original contract, by Kemp and A. J. Towns, that no other bar-room should be kept in said hotel, and it was, by accident or mistake, left out of the writing, where it was intended to be put; said transferees took the lease, supposing it contained such a clause, and the administrators, Collier and Clark, all knew that it was a part of said contract, prior to their said renting and sub-renting.

Clark is about opening his bar-room in said room; it will damage Herring & Mock, and Clark is insolvent. They

prayed injunction against Clark, and reformation of the deed against the administrators. Judge Clark ordered the defendants to show cause, before him, why the injunction should not issue. Before action taken, the said county became part of Judge Strozier's circuit. He issued a like order. Defendants being served and failing to appear, he issued the order for injunction.

Defendants answered the bill. They denied notice of any restrictive contract, as set up. The administrators also set up that Kemp's contract was not assignable. Upon these answers and certain affidavits, they moved to dissolve an injunction. The substance of these affidavits was as follows: Herring affirmed that one Randall rented a room in said hotel from A. J. Towns, and wished to open a bar-room, but Towns would not allow it; that Towns kept the hotel for several months, and one Stubblefield for a year, and neither offered to put a bar therein; that he knew of said restriction before he bought of Camp, and that he heard Collier say he knew it before he rented the hotel, and that Clark knew it before he opened his bar-room.

Kemp affirmed that it was expressly understood, when said contract was made, that such restrictive clause should be in it, but being intimate with Towns, he did not notice that it was left out; that Richard Towns knew this before he rented the hotel to Collier; that he paid largely for said exclusive privilege, and A. J. Towns had frequently spoken of it and tried to buy out this restrictive right; and that when Richard Towns rented said room to Randall, and he, Kemp, notified him that Randall was opening a bar-room there, he stopped Randall and voluntarily offered to interline said restrictive clause into the original contract. Camp affirmed that he had always understood that such clause was in the lease, but had feared that it was avoided, because, after the lease, A. J. Towns had built an addition to said hotel.

One Westbrook, J. W. Kemp, and one Mercer, each affirmed that he had heard A. J. Towns say Kemp's right to keep a bar in said hotel was exclusive.

For movants, L. P. D. Warren, an attorney, affirmed that he drew the lease for A. J. Towns and Kemp, according to what they told him the contract was, read it over to them before execution, and they said it was correct.

Richard Towns affirmed that he refused to let Randall keep a bar there only because Randall was of bad character. W. H. Towns and Thomas Corlew each affirmed that he had heard A. J. Towns say Kemp had no exclusive right to keep a bar in said hotel. Another witness not only affirmed the same, but that he heard Kemp beg A. J. Towns not to open another bar-room in the hotel. There were other affidavits, but they only denied notice to Collier and Clark.

Defendants moved to dissolve the injunction because there was no equity in the bill, or if there was, the answers and affidavits swore it off; because defendants had no notice of said exclusive right; because complainant's injury is not irreparable; because, as assignees of the lease, they cannot reform it, Kemp not being a party; and last, because said lease is not assignable.

The Chancellor refused to dissolve the injunction, and that is assigned as error.

VASON & DAVIS, for plaintiffs in error.

D. H. POPE, by JULIUS BROWN, for defendants.

McCAY, Judge.

1. We will not look closely into the judgment of a Circuit Judge on a motion to dissolve an injunction, on the facts. The law leaves much, in such cases, to his discretion—his judgment, at best, is only temporary, till the hearing, and there is great propriety in trusting to the discretion of the Judge upon the facts, if there be no error of *law.*

2. The paper set forth in the record, conveying the interest in this room, is clearly not a mere contract of writing, so as to give the tenant only an usufruct, as provided by section 2253 of the Code, and which, by that section, cannot be con-

veyed to another without consent of the landlord. This paper can hardly be called a lease, since it wants one of the marked ingredients of a lease, the agreement to pay rent. It is rather an estate for years in the property—a purchase of an interest in the estate for a limited period. Under section 2247, such an estate *passes as realty*, and under section 2249, the owner has as absolute a right to use the property, as if he had a greater estate, not injuring the revenue. We see no reason, therefore, why this estate for years may not be bought and sold as any other real estate. That section of the Code denying the right of a tenant to convey, applies only to the case put, to-wit: when the tenant has a mere use, but no estate, as is the case here.

3. It would be very dangerous doctrine to say that a mere tenant, by the month or year, is himself entitled to notice of such equities as bind the landlord. If this were the case, it would always be in the power of a holder of land to defeat the claim of the true owner. However it might be that notice of equities could be brought home to him, he could always escape the result by getting innocent tenants. The tenant is the mere holder of possession for the landlard, and any equity affecting the landlord's title, of which he has notice, applies also to the tenant. We think this a proper case to be tried by a jury.

Judgment affirmed.