## ROSEN et al. v. WOLFF.

1. Where a lessor who has a leasehold estate in two adjoining stores leases one to a tenant, and in the lease stipulates for himself and assigns that he will not let the other store to any person for the purpose of conducting therein a business similar to that to be conducted by his tenant, such restrictive agreement is legal and valid, and in equity will bind a subsequent lessee of the second store, or his assignee, with notice of such restrictive agreement.

2. A court of equity will, at the instance of the first lessee, enjoin the lessee of the second store, or his assignee, who takes with notice of such restrictive agreement, from violating the same, whenever the damages are irreparable and difficult of computation.

3. The chancellor did not err in granting a temporary injunction, under the facts in this case.

No. 2395.      FEBRUARY 14, 1922.

Injunction. Before Judge Meldrim. Chatham superior court. November 30, 1920.

On February 10, 1920, the Chain Stores Leasing Company of New York leased to S. Charles Wolff the premises known as No. 43 Barnard street in the city of Savannah, for the term of three years, six and one half months, from October 1, 1920, and ending April 15, 1924. The written lease contained this provision: "It is further covenanted and agreed that during the time said premises shall be occupied by lessee, the lessor shall not rent any of its other property facing Barnard street between Broughton street and Congress street lane for the sale of men's and boys' hats, caps, and other furnishings." This lease also contained this covenant: "It is expressly stipulated, covenanted, and agreed that all the terms, provisions, conditions, covenants, and agreements contained in this agreement are to apply to and be binding upon the parties hereto, their legal heirs, representatives, and assigns."

On February 2, 1920, said Chain Stores Leasing Company of New York leased to the Federal System of Bakeries of Georgia, their heirs, executors, administrators, successors, or assigns, among other property, Nos. 45 and 47 Barnard street in the city of Savannah, "to be used as a bakery and not otherwise." These premises faced Barnard street between Broughton street and Congress street lane. This lease contained this stipulation: "Lessee has the right to sublet said premises as a whole, or any part thereof, to any reputable business, only after obtaining the written con-

sent of lessor; such subletting is not, however, to release said lessee from this or any part of its obligations under its lease."

On November 23, 1920, the Stillwell Realty Company, for the Federal System of Bakeries of Georgia, leased the premises at 47 Barnard street to Lew W. Rosen to January 1, 1921, with the privilege of leasing for one year if offer of $225 per month was accepted, or if any other offer was accepted; and the following receipt was given:

"Savannah, Ga., 11-23-20.

"Received from Lew W. Rosen $225.00, rent to Jany. 1st, 1921, with privilege of leasing for one year if offer of $225.00 month is accepted, or if any other offer is accepted.

Stillwell Realty Co."

W. H. Stillwell acted for the W. H. Stillwell Realty Company in renting this property for the Federal System of Bakeries of Georgia. It does not appear that there was any written lease from the Federal System of Bakeries of Georgia to Rosen; and there was no written consent from the Chain Stores Leasing Company for the Federal System of Bakeries of Georgia to sublet said premises to Rosen.

Wolff filed his petition against the Chain Stores Leasing Company, the Federal System of Bakeries of Georgia, Stillwell Realty Company, W. H. Stillwell, and Lew W. Rosen, in which he sought to enjoin the defendants from entering into any lease or rental contract under which Rosen would be permitted to conduct a business for the sale of men's and boys' clothing, hats, caps, or other furnishings, and Rosen from conducting such business at 47 Barnard street. He alleged that if Rosen should be permitted to conduct at 47 Barnard street a men's and boys' clothing and furnishing business, he would be damaged in an irreparable manner, as his damages could not be easily computed.

Rosen filed his motion to dismiss the plaintiff's petition on the grounds, first, because it set up no equity; second, because it did not pray for a permanent injunction; and third, because any cause of action which the plaintiff might have is against the Chain Stores Leasing Company, and as there is no allegation that the said landlord is insolvent, or unable to respond in damages, or any other reason given why a court of equity should intervene and deprive the defendant of his legal rights. In his answer Rosen set up that

Stillwell had rented him the premises at 45-47 Barnard street, and that the contract of rental had been completed, and the act sought to be enjoined had been performed prior to the issuance of the restraining order in this case.

Wolff, among other things, testified that he was conducting a general business for the sale of men's and boys' clothing, hats, caps, and other furnishings at No. 43 Barnard street under his lease. On November 24, 1920, Rosen called to see him to get the keys to the store at 47 Barnard street next door to his store, and told Wolff that he was going to open the store for the sale of men's and boys' clothing and other commodities. He told Rosen that he could not open that kind of business at that place, as his lease would prevent him. The next morning he took his lease around and showed it to Rosen. If Rosen is permitted to open this business next door to him it will do him a great deal of damage. He could not estimate the damage in dollars and cents. Rosen is a large wholesaler and could sell goods cheaper than Wolff could buy them. On or about September 20, 1920, he called the attention of W. H. Stillwell, agent of the Federal System of Bakeries of Georgia, to the fact that his lease from the Chain Stores Leasing Company contained a clause prohibiting the leasing of the adjoining store, No. 47 Barnard street, to any one for the purpose of conducting a business similar to his.

Rosen testified that he called on Wolff at the direction of W. H. Stillwell, agent for the Federal System of Bakeries, for the key to No. 47 Barnard street. At the time he called on Wolff, on the 24th of November, he had already completed his arrangements with Stillwell and had rented the place known as No. 47 Barnard street. He had paid Stillwell $225 as rental for the place from that date to the first of January, with the option on his part for an additional term for one year from January 1, 1921, at the rate of $225 per month, if that amount was acceptable to the Federal System of Bakeries, and, if that amount was not acceptable, then at such rate as would be acceptable to them. He proposed to enter the business at once, open the store, and conduct it as a going concern indefinitely. After leasing the store from Stillwell and when he went to get the keys from Wolff the latter told him he could not rent it because of the terms of his lease. That was the first he knew of any restrictions on the place, as Stillwell had told him

that he could conduct any business there. The next morning Wolff called to see him and showed him his lease. The only thing he did prior to the time Wolff notified him of the provisions of his lease, which was at the time he called for the keys to the store at 47 Barnard street, was to pay to Stillwell $225 as rental for the premises.

In the lease from the Chain Stores Leasing Company to the Federal System of Bakeries there was this stipulation: "It is expressly stipulated, covenanted and agreed that all the terms, provisions, conditions, covenants, and agreements contained in this agreement are to comply [?] and be binding upon the parties hereto, their legal representatives and assigns." It was likewise stipulated that the rental under this lease should be paid to Forrest & George Adair, their successors or assigns, as the agents of the lessor. Henry Robinson, a witness for the plaintiff, testified that he was connected with the Chain Stores Leasing Company and with Forrest & George Adair, who managed the stores of the Chain Stores Leasing Company. He was one of those in charge of the renting of the stores to the Federal System of Bakeries. W. H. Toole Jr. has equal authority with him. The Federal System of Bakeries was never given permission to rent No. 47 Barnard street, Savannah, to Lew W. Rosen, to be used as a clothing store. He was testifying from the file relating to this matter. Mr. Collins, vice-president of the Federal System of Bakeries, acknowledged to him over long-distance telephone, on Friday preceding the hearing in this case, that he never asked the Chain Stores Leasing Company for permission to subrent No. 47 Barnard street.

The defendant introduced the following extract from a letter dated October 21, 1920, addressed to M. A. Collins, vice-president of the Federal System of Bakeries, and signed "Forrest & George Adair, by W. H. Toole, Jr.," reading as follows: "The only restrictions we have on the property at the corner of Broughton and Barnard streets, Savannah, is a shoe store."

There was introduced in evidence a telegram from Forrest & George Adair to the Federal System of Bakeries, dated November 24, 1920, reading as follows: "We understand Stillwell, your Savannah representative, desires to lease your Barnard street store for clothing business. This can not be done, as it is in violation of Wolff lease. Building is restricted for further leasing to shoes, men's clothing, and shoe repair."

A reply telegram from M. A. Collins, to Forrest & George Adair, dated November 24, 1920, was introduced in evidence. This telegram read as follows: "Your telegram. See your letter of October twenty-first, in which you state quote the only restriction we have on property at Barnard street and Broughton Savannah is a shoe store (stop). We acted in accordance with this letter as above quoted and can not understand your present attitude (stop). Stillwell was not authorized to sublet the clothing store until after receipt of this letter."

There was introduced in evidence a letter from Forrest & George Adair, signed by Henry H. Robinson, dated November 24, 1920, to Morris Bernstein, in which the writers stated that they had just received from Bernstein a telegram stating that Stillwell, representing the Federal System of Bakeries, was about to lease their Barnard street store to a client for the purpose of conducting a clothing business, and in which they stated that they had wired Mr. Collins, vice-president of the Federal System of Bakeries, that this could not be done. They further wrote that "in fact in subleasing at all it is necessary for the bakery to secure written permission of the lessor." They further stated that Mr. Wolff could rest assured that they would not give permission to any one to conduct a clothing business in the store adjoining him.

The court granted a temporary injunction, and this judgment is assigned as error.

*Lawrence & Abrahams* and *Hitch & Denmark,* for plaintiffs in error.

*McIntire, Walsh & Bernstein,* contra.

HINES, J. (After stating the foregoing facts.)

1. It is insisted by counsel for the plaintiffs in error that injunction will not lie for the breach of a covenant, where there is no privity shown between the parties. A party will not be permitted to use land in a manner inconsistent with a contract entered into by the owner under whom he claims, and with notice of which he took; and equity, in a case where the damages are irreparable or difficult of computation, will enjoin such use. Covenants of this sort have been invariably enforced if they were restrictive. Tulk *v.* Moxhay, 2 Phil. 774; Haywood *v.* Brunswick Permanent Benefit Building Society, 8 L. R. Q. B. D. 403; *Swanson* v. *Kirby,* 98 *Ga.* 586 (26 S. E. 71) *Hancock* v. *Gumm,* 151

*Ga.* 667, 675 (107 S. E. 872) ; DeGray *v.* Monmouth etc. Co., 50 N. J. Eq. 329 (24 Atl. 388) ; Kirkpatrick *v.* Peshine, 24 N. J. Eq. 206; Lewis *v.* Gollner, 129 N. Y. 227 (29 N. E. 81, 26 Am. St. R. 516).

A true covenant which runs with the land runs by reason of privity of estate, and can only be enforced at law by the original parties thereto or their privies. Equity, however, will enforce a lawful contract against a person who takes with notice, " which rests upon privity of conscience." In such a case the person violating the agreement is a privy in conscience with the maker thereof. 31 Yale Law Jour. (Dec., 1921) 127, 131. Such agreements are legal and valid, and courts of equity will enforce such agreements for the protection of the business to which they relate. Francisco *v.* Smith, 143 N. Y. 488 (38 N. E. 980). This is the true equity of the case at bar.

2. It is insisted that the covenant in the lease from the Chain Stores Leasing Company to Wolff, wherein it is agreed that during the time the leased premises shall be occupied by the lessee the lessor shall not rent any of its property facing Barnard street between Broughton street and Congress street lane for the sale of men's and boys' hats, caps and other furnishings, is a personal covenant, and not a covenant running with the land, and that for this reason an action will lie against the original covenantor alone. There is much confusion and conflict in the authorities upon the subject of what constitutes a personal covenant and what constitutes a covenant running with the land. If a covenant is such that its performance or non-performance must affect the nature, quality, value, or mode of enjoyment of the demised premises, it is not a mere personal covenant, but one that runs with the land and binds assignees of the covenantor as well as the covenantee and his personal representative. *Atlanta Consolidated R. Co.* v. *Jackson,* 108 *Ga.* 634, 638 (34 S. E. 184) ; *A., K. & N. Ry. Co.* v. *McKinney,* 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. 436, 110 Am. St. R. 215) ; *Muscogee Mfg. Co.* v. *Eagle & Phenix Mills,* 126 *Ga.* 210 (54 S. E. 1028, 7 L. R. A. (N. S.) 1139).

The subject-matter of the covenant need not be the land demised. The thing to be done may be on other land than that demised. Sampson *v.* Easterby, 9 Barn. & Cress. 505; Easterby & Sampson, 6 Bing. 644; Dewar *v.* Goodman, H. L. A. C. 72, 77; Ricketts *v.*

Enfield Church Wardens (1909), 1 Ch. 544; Lyle *v.* Smith, (1909, K. B.) 2 Ir. 58; Norman *v.* Wells, 17 Wend. (N. Y.) 136; *A. K. & N. Ry. Co.* v. *McKinney,* supra; *Muscogee Mfg. Co.* v. *Eagle & Phenix Mills,* supra. Whether a covenant will or will not run with the land does not depend so much on whether it is to be performed thereon as on whether it tends directly or necessarily to enhance its value or render it more beneficial and convenient to those by whom it is used or occupied. *A., K. & N. Ry. Co.* v. *McKinney,* supra.

Many cases hold that the question whether a covenant will or will not run with the land does not depend so much on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render its use more beneficial and convenient to those by whom it is owned or occupied; and that if this be the case, every successive assignee of the land will be entitled to enforce the covenant. 15 C. J. 1240, § 54, note 52. The decisions are in sharp disagreement as to whether this stipulation constitutes a covenant running with the land, or is a personal covenant which can only be enforced against the covenantor. Where A demised a sawmill and covenanted not to establish another sawmill on the same mill stream, it was held that the covenant ran with the land demised. Norman *v.* Wells, 17 Wend. (N. Y.) 136. Lessors leased certain land to B, with a covenant by them and their assigns with B, not to build beyond a certain line on the adjoining premises. B assigned to the plaintiff, who sued upon the covenant. It was held that even though this covenant related to the adjoining land, it was for the benefit of, and so ran with, the land demised. Ricketts *v.* Enfield Church Wardens (1909), 1 Ch. D. 544. A man conveyed land in a village adjoining an open space, called a public square, which he had dedicated to the public as such, and covenanted not to build on the dedicated ground. The grantee sold to another, who brought his bill to restrain the original grantor in an attempt to build contrary to his covenant, and it was held that the covenant ran with the land. Watertown *v.* Cowen, 5 Paige, 510, 514.

The foregoing are typical of the cases which hold that such a covenant runs with the land. Covenant in a lease of a lot in a town by the owner of such town that the lessee should have the exclusive right to keep a store in the town for a period of ten

years is not binding upon persons leasing other lots in the same town from such owner, although they have notice thereof: Taylor v. Owen, 2 Blackf. (Ind.) 301 (20 Am. D. 115). K conveyed to F a quarry in Longmeadow of six acres, and covenanted with F, and his assigns, that he would not open or work, or allow any other person or persons to open or work any quarry or quarries on his farm in said Longmeadow. By mesne conveyances plaintiffs became possessed of the quarry conveyed to F, and the defendants of the surrounding land referred to in the covenant. The defendants were quarrying stone on this land, and the plaintiffs filed their bill in equity for an injunction. It was held that such stipulation was a personal covenant and not one running with the land. Justice Holmes held that this covenant did not "touch or concern" or "extend to the support" of the thing conveyed, and attached new and unusual burdens to land, which cannot be done by way of either benefit or burden. Norcross v. James, 140 Mass. 188 (2 N. E. 946). These are typical of the cases holding such a covenant a personal one.

But whether it is a covenant running with the land or not is immaterial in this case. It is a restrictive agreement, affecting the premises leased; and if Rosen leased 47 Barnard street with notice of it, equity will enjoin him from violating this agreement. Even if the agreement in the lease between the Chain Stores Leasing Company and Wolff is not a covenant running with the land, equity treats it as one which goes with the land into the hands of a purchaser or lessee with notice, and such purchaser or lessee will be required to observe such restrictive agreement. *Hancock* v. *Gumm,* 151 *Ga.* 667 (supra).

There is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode, of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate. It is immaterial in such cases whether the covenant runs with the land or not, the general rule being that it will be enforced according to the intention of the parties. It is only necessary that the covenant concern the land or its use, and that the subsequent grantee has notice of it. Covenants are so enforced on the

principle of preventing a party having knowledge of the just rights of another from defeating such rights. 7 R. C. L. 1125, § 39.

3. But it is insisted that Rosen rented the premises at 47 Barnard street without notice of this restrictive agreement in the Wolff lease. Rosen does so swear; but we think that there are circumstances in this case which should have put him on inquiry that would have led to knowledge of this stipulation. He is chargeable with notice by implication of every fact affecting the rights of his lessor, and discoverable by examination of the lease of the Federal System of Bakeries, and of every fact with which he by reasonable diligence ought to have become acquainted. In the lease to the Federal System of Bakeries it appears that 47 Barnard street was leased to this company to be used as a bakery only. In this lease there is a stipulation that it was binding upon the parties thereto and their assigns. By an inspection of the lease Rosen could easily have ascertained that his lessor could only use these premises for a bakery, and therefore could give him no greater right than it possessed in this respect. He would have further found that his lessor had the right to sublet these premises only after obtaining written consent of the Chain Stores Leasing Company.

It may be said that the Federal System of Bakeries made an inquiry of Forrest & George Adair, agents for the Chain Stores Leasing Company, as to the restriction in the Wolff lease; and that these agents replied by letter dated October 21, 1920, that the only restriction they had on the property at the corner of Broughton and Barnard street, Savannah, Ga., was one prohibiting the lease of said premises for a shoe store. The Federal System of Bakeries only agreed to lease to Rosen after receiving the letter. There is a telegram in evidence from M. A. Collins to Forrest & George Adair, dated November 24, 1920, to the effect that they only authorized Stillwell to sublet the premises to Rosen to be used as a clothing store after the receipt of their letter of October 21st. But the undisputed evidence is that on September 30, 1920, Wolff called the attention of W. H. Stillwell, the agent of the Federal System of Bakeries, who had in charge the leasing of 47 Barnard street for said company, to the fact that the lease from the Chain Stores Leasing Company to him contained

a clause prohibiting the leasing of No. 47 Barnard street for the same kind of business as Wolff was engaged in. This notice to the agent was notice to his principal. Stillwell says Wolff did not submit to him his written lease for examination. It does not appear that Stillwell requested Wolff to show him his written lease. No doubt Wolff would have gladly, on request, have shown his lease to Stillwell. Anyway, the agent was put upon notice of the restrictive stipulation in Wolff's lease; and this was notice to the Federal System of Bakeries. With such notice and knowledge the Federal System of Bakeries rented to Wolff.

The facts and circumstances under which Rosen rented the premises at 47 Barnard street were sufficient to authorize the court to find that upon due inquiry Rosen could have ascertained the fact of the restrictive agreement contained in the lease to Wolff. The fact that these premises were leased to the Federal System of Bakeries to be used only as a bakery, and that the latter company could not sublet without the written consent of the Chain Stores Leasing Company, might be held sufficient to put Rosen on inquiry, he being bound by the terms of the lease to this company and standing in its shoes, for the purpose of ascertaining what right his lessor had to lease these premises for a different business from that for which it was authorized to use the same under its lease. So we cannot say that the chancellor's finding, that Rosen rented the store at 47 Barnard street with notice of the restriction in the lease of Wolff, was without evidence to support it.

Furthermore the express notice given by Wolff to the Federal System of Bakeries through its agent, Stillwell, would be binding upon Rosen. The tenant is a mere holder of the possession for the landlord, and in equity anything affecting the landlord's title, of which he has notice, applies also to the tenant. *Clark* v. *Herring,* 43 *Ga.* 226. This is true where the tenant does not acquire any estate in the demised premises but only a usufruct therein.

4. But it is insisted finally that the lease from the Chain Stores Leasing Company to the Federal System of Bakeries antedates the lease from the former to Wolff, and that rights acquired under the former lease are superior to those acquired under the

latter lease. *Qui prior est tempore potior est jure.* If the Federal System of Bakeries under its lease had acquired the right to use these premises for any purpose or to sublet the same for any purpose, then its right would be superior to that of Wolff. But the Federal System of Bakeries acquired only a restricted use of the premises. This company could only use them for a bakery. Therefore the company could not sublet for any other purpose than a bakery.

But it may be said that the Federal System of Bakeries was authorized under its lease to sublet to any " reputable business," and that this gave them the power to sublet the premises for any use. We do not so construe this provision. The provision in the lease that the lessee was only to use the premises for a bakery and for no other purpose, and the provision in regard to subletting, must be construed together. It would be a strange construction of this provision to hold that the lessee was restricted in the use of the premises to that of a bakery only, but was authorized immediately to sublet, with the landlord's consent, to another for any use or business. Construing the two provisions together, they mean that the lessee could sublet the premises to any reputable concern for the purpose of conducting a bakery.

So, in our opinion, the Federal System of Bakeries did not acquire under its prior lease any right which would give it authority to lease these premises to another to conduct any business other than that of a bakery. Having no such right, it could not give to its tenant any greater right than it possessed.

*Judgment affirmed. All the Justices concur.*