**In re B. Cleo JENKINS, Wauka, Inc., Debtors.**

**B. Cleo JENKINS and Wauka, Inc., Plaintiffs,**

v.

**Donald SOSEBEE and Counte Cooley, Defendants.**

**Bankruptcy Nos. 82–00261G, 82–00262G. Adv. No. 85–0025G.**

United States Bankruptcy Court, N.D. Georgia, Gainesville Division.

June 3, 1987.

Troy R. Millikan, Gainesville, Ga., for debtors/plaintiffs.

Richard N. Hubert, Atlanta, Ga., for Counte Cooley.

Jack M. Carey, Sartain & Carey, Gainesville, Ga., for Donald Sosebee.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

This matter is before the court upon the complaint of plaintiff-debtors against defendants Donald Sosebee and Counte Cooley to compel Donald Sosebee to turn over funds to complete the purchase of certain real property and to terminate Counte Cooley's alleged interest in that property. Debtor subsequently amended the complaint and added Wauka Communications, Inc. as a party defendant. Based upon the evidence and argument presented at trial January 30, 1987, and pursuant to Bankruptcy Rule 7052, the court's findings of fact and conclusions of law are as follows.

## FINDINGS OF FACT

Debtors, B. Cleo Jenkins, d/b/a Jenkins and Associates, d/b/a Paradise Homes and

d/b/a Freedom Homes, and June R. Jenkins, filed a Chapter 11 petition in this court on September 7, 1982 (Case No. 82–00261G). A Chapter 11 petition was also filed on behalf of debtor, Wauka, Inc. also on the same date (Case No. 82–00262G). At the time that the Chapter 11 petitions were filed, Lot 15, Wauka Mountain Subdivision, was titled in the name of the debtor, Wauka, Inc., as evidenced by a quitclaim deed from June R. Jenkins to Wauka, Inc., bearing a date of December 18, 1981 and recorded in the Hall County, Georgia, records on that date and in the White County, Georgia, records on October 5, 1983. Plaintiffs' Exhibit 2. At the bankruptcy filing, Lot 15 had passed into the exclusive jurisdiction of this court for administration pursuant to provisions of Chapter 11 of the Bankruptcy Code. Debtors filed plans of reorganization which, as ultimately amended, were duly confirmed by orders of the court entered March 10, 1983, in each respective case. Pursuant to the provisions of the amended plans, the debtor, Wauka, Inc., offered to sell certain properties including Lot 15, Wauka Mountain subdivision.

At public auction on September 24, 1983, Lot 15 was offered for sale and sold free and clear of any liens or restrictions, except those restrictions which were of record at filing, to defendant Donald Sosebee for a bid price of $44,000. Subsequent to the auction sale, defendant Counte Cooley learned for the first time that this property had been offered for sale. Due to a lack of notice, Cooley had not been accorded an opportunity to assert any claims, to exercise any rights or to take any action with regard to Lot 15 in the context of the sale pursuant to the confirmed plan.

On December 29, 1983, Cooley filed a response, in Case No. 82–00261G, to debtors' applications for approval of sale and for direction as to whom debtors were to convey Lot 15 in Wauka Mountain subdivision. The substance of the response was a challenge to the jurisdiction of the court, an assertion of a failure to state a claim, and a claimed right of first refusal relative to Lot 15, alleged to have been granted to Cooley in a deed and separate sales contract on Lot 16, Wauka Mountain Subdivision, between June Jenkins and Cooley. *See* Plaintiffs' Exhibit 14 (warranty deed—Lot 16); Defendant's Exhibit 1, page 2, paragraph 8 (sales contract—Lot 16). Although the deed to Lot 16 was filed of record July 28, 1981, in White County, Georgia, the sales contract, executed July 2, 1981, was not recorded. The contract remained unrecorded until December 3, 1985, some four years later and approximately 1 year and 3 months after commencement of the Chapter 11 cases. The Cooley response did not make any assertions of claims or interests relating to restrictions subsequently asserted herein. The court also notes that the Cooley response was filed in the individual Chapter 11 Case No. 82–00261G, but his brief bears the case style of both the individual and the corporate case of Wauka, Inc., Case No. 82–00262G.

After hearings and the submission of briefs, Bankruptcy Judge William L. Norton, Jr., the sitting bankruptcy judge at the time, entered an Order dated March 15, 1984, which bears a signed date of March 12, 1984, in which he recognized defendant Cooley's right of first refusal as a personal right. He ordered a new sale of Lot 15 and established a procedure that permitted Sosebee to make a further bid on Lot 15, and thereafter, afford Cooley an opportunity to exercise his right of first refusal. By Order entered March 30, 1984, which bears a signed date of March 23, 1984, Judge Norton entered a further Order modifying the Order of March 15, 1984, setting forth the procedures to be followed with regard to the further bidding and affording Cooley opportunity to exercise his right of first refusal. Judge Norton's Orders of March 15 and 30, 1984 bear the case styles of both cases and are applicable in both cases. 39 B.R. 734.

On March 30, 1984, the debtor filed a new application for leave to sell, seeking authorization of the court to sell the property to either Cooley or Sosebee, depending upon who was the successful bidder, with the sale to be approved and closed on April 27, 1984. Pursuant to the orders of Judge

Norton, Sosebee made another, substantially increased, offer for Lot 15 in the sum of $100,000 dollars. Sosebee, in making his further bid upon Lot 15, did so upon the same terms and conditions as had been bid at the public auction, i.e., his bid was to purchase Lot 15 free and clear of liens and restrictions, except those restrictions of record. Upon receipt of that bid, counsel for the debtors communicated the bid to defendant Cooley for the purpose of affording him the opportunity to exercise his right of first refusal as provided by the orders of Judge Norton. Defendant Cooley did not exercise the right of first refusal.

Cooley filed a notice of appeal of Judge Norton's Order on April 5, 1984. Thereafter, on April 23, 1984, Cooley filed objections to confirmation of sale and an application to set aside sale. For the first time in this case, Cooley raised the issue of alleged restrictive covenants running with the land which he alleged would constitute further unrecorded restrictions upon Lot 15. These covenants were contained in the then unrecorded sales contract for Lot 16, executed July 2, 1981. *See* Defendant's Exhibit 1, page 3, paragraph 11. Cooley contended that he owned certain rights affecting the use of Lot 15 in that it is encumbered with a limitation and restriction on its use as it relates to certain specified commercial and telecommunications purposes. Further, Cooley alleged that certain bidders for Lot 15 intended to use the property for the installation of telecommunications equipment, contrary to the terms of the restrictive covenant by which he alleged they were duly bound. Cooley sought from the court a denial of confirmation of the sale of Lot 15 unless the present bidders specifically recognized the limitations contained in the subject covenant.

In considering and ruling upon the appeal of Judge Norton's Order, U.S. District Judge William C. O'Kelley, by order of August 21, 1984, affirmed the bankruptcy court's ruling on the validity of the right of first refusal. The Order of Judge Norton mentioned the restrictions that are the subject matter of the instant dispute, but no findings or conclusions were reached by the court regarding the restrictive covenant. In fact, his order makes no comment on the provision. Judge O'Kelley concluded that the matter was not properly before him because it had not been presented to the bankruptcy court, and declined to consider it.

Following the entry of Judge O'Kelley's Order of August 21, 1984, debtors, on September 4, 1984, filed a further application to sell Lot 15 to Donald Sosebee free and clear of unrecorded restrictions for the sale price of $100,000. This was the first pleading filed by debtors which specifically sought an order authorizing them to sell and convey Lot 15 free and clear of any unrecorded restrictions asserted by Cooley as contained in the sales contract. Defendant's Exhibit 1. Unfortunately, this matter was not heard and determined by Judge Norton before he resigned from the bench.

Thereafter, these cases were transferred to Bankruptcy Judge Hugh Robinson, who entered an Order on September 6, 1985, in which he dismissed the debtor's September 4, 1984 application to sell to Donald Sosebee. Judge Robinson essentially found that the successful bidder at a bankruptcy sale is bound by the doctrine of caveat emptor and his bid is subject to whatever restrictions exist. For that and other reasons stated in the order, including Sosebee's actual knowledge at the time of his second bid, Judge Robinson declined to interpret the Jenkins-Cooley contract or address debtors' application. This case was subsequently transferred to the undersigned on or after January 1, 1986.

This court finds that the September 4, 1984 application, in the first instance, was an attempt to obtain an adjudication on the merits of the claims of the objecting party, in this case Cooley, without the necessity of complying with applicable rules and procedure of this court. To the extent the application sought adjudication of the validity, priority or extent of a lien or "other interest in property" it is an adversary proceeding governed by "Part V. Adversary Proceedings" of the Bankruptcy Rules. *See* Rule 7001. However, this issue does not appear to have been raised before Judge

Robinson. In his Order, Judge Robinson did not address the application filed by debtors on March 30, 1984, nor the objection to the sale and application to set aside the sale, filed by Cooley on April 23, 1984. Those issues have now been properly joined and, for the first time, litigated by all proper parties. By agreement the trial included this adversary proceeding, the March 30, 1984 application, and Cooley's objection to sale and application to set aside sale filed April 23, 1984.

Debtors' confirmed plans of reorganization provide for a retention of general jurisdiction of the debtors and their assets. The plan specifically provides, in Article V, paragraphs 2 and 6, that jurisdiction be retained as follows:

> 2. Determination of all questions and disputes regarding title to the assets of the estate, and determination of all cause [sic] of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the debtors and any other party....
>
> ....
>
> 6. Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the debtors and to impose such limitations, restrictions, terms and conditions of such title, rights, and powers as this court may deem necessary.

At all relevant times, the debtor, Wauka, Inc., has continuously held title to the subject property. The sale pending before the court has been made under the supervision of this court pursuant to and to carry out the debtors' confirmed plans. The evidence does not show or establish that defendant, Wauka Communications, Inc., has any interest in Lot 15, including the subject alleged covenant running with the land. The court concludes that this defendant has no interest in or to Lot 15.

## CONCLUSIONS OF LAW

The question presented is whether an alleged restrictive covenant limiting the use of Lot 15, Wauka Mountain Subdivision, that is contained in an unrecorded contract for sale of adjacent Lot 16, is enforceable against a Chapter 11 debtor-in-possession. Initially the court finds the evidence undisputed that debtor Wauka, Inc. offered Lot 15 for sale at public auction with the sale to be made free and clear of all liens and all restrictions, except restrictions of record. Plaintiffs' Exhibits 3 and 13; Transcript of January 30, 1987, pages 34–36 (Cleo Jenkins), pages 105–09, and 116–20 (Donald Sosebee). The sale was reduced to a written contract (Plaintiffs' Exhibit 3) subject to restrictive covenants attached and incorporated into the contract. (Plaintiffs' Exhibit 13.

Upon learning of the public auction sale and before court approval, Cooley filed a response to the debtors' application for direction and challenged the proposed sale. Cooley successfully challenged the sale in connection with his asserted right of first refusal. He did not raise or assert his alleged restrictive covenant, however, even though it arose out of the same contract for sale of Lot 16. It was only on appeal from Judge Norton's Order of March 15, 1984, amended March 30, 1984, that Cooley argued for the first time that Lot 15 could not be subject to final sale without specific knowledge and cognizance of the restrictive covenant contained in the July 2, 1981 sales contract.

▮ This court concludes that the issue of the enforceability of the restrictive covenant against Lot 15 by Cooley could have and should have been raised in the proceeding before Judge Norton. Accordingly the doctrine of res judicata appears appropriate in this situation. This doctrine provides that when a final judgment is entered on the merits of a case " '[i]t is a finality as to the claim or demand in controversy, concluding parties ... not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983), quoting *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877). *See also Precision Air*

*Parts, Inc. v. Avco Corporation*, 736 F.2d 1499, 1501 (11th Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985).

The action before Judge Norton involved disposition of Lot 15 by sale upon the same terms as the original auction sale but subject to Cooley's right of first refusal. At that time the parties had the opportunity to litigate Cooley's entire interest in the property but for some unexplained reason failed to do so. In the instant suit, Cooley seeks to assert a right restricting use of Lot 15 that could and should have been asserted in his initial challenge to the original auction sale of Lot 15. Accordingly, Cooley is estopped from now raising this issue in the present action.

Even if Cooley is not barred by res judicata, this court concludes that the doctrine of merger, as applied in real estate transactions in Georgia, controls whether such an unrecorded covenant running with the land is binding on an assignee of title to the realty to which it is allegedly applicable. Further, the court concludes that even if the application of the merger doctrine is not appropriate in this instance, debtor, acting as bona fide purchaser pursuant to 11 U.S.C. Section 544(a)(3), could void Cooley's unrecorded restrictive interest in Lot 15. Thus, the Chapter 11 debtor/owner of Lot 15 could sell this property to a buyer, free and clear of Cooley's restrictive interest.

The provision in the contract of sale of July 2, 1981 for Lot 16, Wauka Mountain Subdivision, purported to grant Cooley a covenant running with the land on the adjacent Lot 15. This agreement provides:

Neither the Seller nor her successors or assigns shall sell, lease or enter into any other arrangement whereby the following individuals, firms or corporations, their successors or assigns, shall locate or have the right to locate any commercial communications equipment or towers or conduct any communications activities on Lot 15 of the Cleo Jenkins Wauka Mountain property ... and in the event Seller ... shall convey Lot 15 to any other person the deed to said party or parties shall contain a covenant running

with the land prohibiting the use of such property as set forth herein.

... [chart omitted]

The above stated restrictions shall not be limited to the numbered frequencies set forth herein, but shall be limited as to the number of repeaters and other pieces of communications equipment existing as of the date of this agreement.

*See* Defendant's Exhibit 1, pages 3–4, paragraph 11.

■ Although language in an instrument of conveyance or contract cannot create a covenant running with the land by merely stating that the interest conveyed is such, this court finds that the interest granted to Cooley by June Jenkins did constitute a covenant running with the land. Contrary to debtors' assertion, the court concludes that the agreement contained in the sales contract to Lot 16 did create a covenant with respect to Lot 15 because it affects the use of and attached to Lot 15. Georgia courts have described this interest in property and its effects as follows:

If a covenant is such that its performance or non-performance must affect the nature, quality, value, or mode of enjoyment of the demised premises, it is not a mere personal covenant, but one that runs with the land and binds assignees of the covenantor as well as the covenantee and his personal representative.

*Rosen v. Wolff*, 152 Ga. 578, 583, 110 S.E. 877 (1922); *Atlanta, Knoxville and Northern Railway v. McKinney*, 124 Ga. 929, 931–32, 53 S.E. 701 (1906); *Atlanta Consolidated Street Railway v. Jackson*, 108 Ga. 634, 638–39, 34 S.E. 184 (1899). Performance of the terms of the restriction did affect the nature of the demised premises, Lot 16, because communications equipment had been or was to be erected on this property.

Debtors argue that the interest granted to Cooley does not constitute a covenant running with the land because it was not part of a conveyance of an interest in Lot 15, and is therefore a mere personal contract between Jenkins and Cooley. The court finds debtors' analysis of the case authority and Georgia real estate law un-

persuasive. A covenant running with the land may exist in favor of a grantee although it attaches to land that is not the subject of the conveyance.

> The subject-matter of the covenant need not be the land demised. The thing to be done may be on other land than that demised.... Many cases hold that the question whether a covenant will or will not run with the land does not depend so much on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render its use more beneficial and convenient to those by whom it is owned or occupied....

*Rosen v. Wolff, supra,* 152 Ga. at 583–84, 110 S.E. 877 (citations omitted). In the present case, Jenkins granted title in Lot 16 to Cooley but also burdened other property, Lot 15, by granting him the benefit of a restrictive covenant binding Lot 15. The prohibition on the use of Lot 15 for the installation of certain telecommunications equipment benefited Lot 16 which was used for that same purpose.

The cases cited by debtors in support of the proposition that the grant of a covenant running with the land must accompany a conveyance of an interest in the property so burdened are distinguishable. In each of those cases, the court held that the covenant in dispute was a personal contract due to a lack of privity of estate between the covenantor and the party claiming the benefit of the covenant. An examination of the facts of those cases indicates that in each instance no conveyance of an interest in land between the parties was ever completed. Without the granting of such an interest, the covenant could not attach to anything and instead constituted a personal obligation between the parties, not binding upon their assignees. *See Johnson v. Myers,* 226 Ga. 23(3), 172 S.E.2d 421 (1970); *Ronveaux v. Walter Realty Investors,* 148 Ga.App. 776, 252 S.E.2d 690 (1979). *See also Copelan v. Acree Oil Co.,* 249 Ga. 276, 290 S.E.2d 94 (1982).

In this case, however, a conveyance of an interest in land did occur. Jenkins, the grantor, owned both Lots 15 and 16 at the time the contract was executed. Cooley, as grantee of Lot 16, could become the beneficiary of a restrictive covenant binding adjacent Lot 15 which Jenkins retained. The use limitations contained in the covenant benefited Lot 16 and its conveyance to Cooley on July 27, 1981 by the party retaining title to the burdened estate, satisfies the requisite conveyance and privity component of a valid covenant running with the land. *See Rosen, supra,* 152 Ga. at 583, 110 S.E. 877.

■ Having concluded that the provision in the sales contract constituted a covenant running with the land, however, the court must next examine its operation in the context of the present facts. Georgia courts have adopted the doctrine of merger in the construction of deeds and contracts to convey realty. *Augusta Land Co. v. Augusta Railway and Electric Co.,* 140 Ga. 519, 79 S.E. 138 (1913); *Holmes v. Worthey,* 159 Ga.App. 262, 266–67, 282 S.E.2d 919 (1981), *aff'd,* 249 Ga. 104, 287 S.E.2d 9 (1982). When parties have contracted to convey land, this doctrine provides that all agreements, unless distinctly collateral, and terms contained in an antecedent sales contract are merged into and superseded by the subsequently delivered deed. Provisions that impose obligations on a vendor not relating to title or possession are excepted from this rule. "Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties." *Augusta Land Co., supra,* 140 Ga. at 522, 79 S.E. 138 (citations omitted). *See also Jordan v. Flynt,* 240 Ga. 359, 362, 240 S.E.2d 858 (1977). The merger rule has been applied to void easements in land as well as other promises contained in a prior contract. *Carr v. Augusta Grocery Co.,* 183 Ga. 346, 188 S.E. 531 (1936).

As applied to the sale of Lot 16 and granting of an interest to Cooley in Lot 15, the doctrine of merger voids the purported grant of a covenant running with the land. The covenant, although contained in the unrecorded contract of July 2, 1981 for sale of Lot 16, was not included in the July 27, 1981 warranty deed to Lot 16. *See* Plain-

tiffs' Exhibit 14 (deed); Defendant's Exhibit 1 (sales contract). This is in contrast with the right of first refusal which both the sales contract and the Lot 16 deed described. In addition, the contract did not contain a survival clause stating that the contract provisions survived the closing which might have prevented the application of the merger rule. *See Gray v. Lynch Contractors, Inc.*, 156 Ga.App. 473, 274 S.E.2d 614 (1980).

Although Cooley argues that the bankruptcy court previously determined that the terms of the sales contract to be performed after execution of the deed survived merger, this court concludes that this issue was not finally determined. *See* 39 B.R. at 737, n. 2. First, as the district court concluded, that order did not consider the enforceability of the restrictive covenant. *See* Order of August 21, 1984, page 3 (O'Kelley, J.). Judge Norton's order contains no explanation or analysis in support of the finding that merger did not occur. That order addressed the right of first refusal which the Lot 16 deed specifically described. The restrictive covenant mentioned in the sales contract was not included or referenced in the Lot 16 deed.

It is this court's view that the provision restricting the use of Lot 15, contained in the unrecorded sales contract to Lot 16, merged in and was superseded by the warranty deed. Because the sales contract was not recorded and the deed to Lot 16 did not include this provision, the asserted covenant merged into the deed and is unenforceable by Cooley. The court also notes that the case authority cited in the March 15, 1984 Order is factually distinguishable from this proceeding. In those cases, the terms of the contract itself supported a finding that the parties' intended obligations contained in executory contracts to survive execution of the deed. *See Cullens v. Woodruff*, 137 Ga.App. 262, 263, 223 S.E.2d 293 (1976); *Knight v. Hedden*, 112 Ga.App. 847, 849, 146 S.E.2d 556 (1965). *See also Kollen v. High Point Forest, Inc.*, 104 Ga.App. 713, 716, 123 S.E.2d 10 (1961).

Based on the evidence presented, this court finds no manifestation of an intent by the parties that execution of the warranty deed constituted only partial performance of the contract to convey, or that any terms not referenced in the deed were intended to survive its execution. *See Postell v. Hearn*, 104 Ga.App. 765, 767, 123 S.E.2d 13 (1961). The sales contract to Lot 16 provided in paragraph 6 as follows:

> Seller and Purchaser agree that such papers as may be legally necessary to carry out the terms of this contract shall be executed and delivered by such parties at the time the sale is consummated.

Defendant's Exhibit 1, page 2. This clearly contemplated finalization of the transaction at closing. *See* Transcript, pages 48, 52–57 (Cleo Jenkins). As recently noted by the Georgia Court of Appeals, an agreement relating to the execution and delivery of documents at closing is subject to the merger rule. *Zarett v. Wasserman*, 180 Ga.App. 565, 566, 349 S.E.2d 518 (1986).

In addition, the provision in the sales contract dealing with the restriction on Lot 15, provided that in the event the seller of that lot conveyed the property "the deed to said party or parties shall contain a covenant running with the land prohibiting the use of such property as set forth herein." Defendant's Exhibit 1, page 3, paragraph 11. As shown by the evidence, the quitclaim deed conveying Lot 15 from June Jenkins to debtor, Wauka, Inc., contained no such language. *See* Plaintiffs' Exhibit 2. Thus, in terms of restrictions on usage of Lot 15 between these parties, their rights are governed by the executed warranty deed to Lot 16 because it superseded the provisions of the sales contract. Accordingly, the court concludes that no enforceable interest in Lot 15 survived the closing and consummation of the sale of Lot 16 in the form of a covenant running with the land as the deed conveying title to Lot 16 granted no such interest. *See* Plaintiffs' Exhibit 14. Likewise, the evidence does not show that any other paper or document was executed or delivered to evidence such covenant or interest.

Even if the court were to determine that the doctrine of merger did not apply to preclude enforceability of Cooley's claimed

interest, Georgia case and statutory law require that a subsequent purchaser take with notice of the covenant to render it enforceable against them. The Georgia Supreme Court, in *Rosen v. Wolff, supra*, 152 Ga. at 585, 110 S.E. 877, explained this rule as follows:

> There is a growing tendency to incorporate equitable doctrines with common-law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, whether named in the instrument or not, and though there is no privity of estate.

See also *Hancock v. Gumm*, 151 Ga. 667, 674, 678, 107 S.E. 872 (1921).[1] This notice may be in the form of actual notice or constructive, record notice. The relevant Georgia recording statute provides:

> A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed.

O.C.G.A. Section 44–2–1. The effect of recording is described as follows:

> Every unrecorded voluntary deed or conveyance of land made by any person shall be void as against subsequent bona fide purchasers for value without notice of such voluntary deed or conveyance....

O.C.G.A. Section 44–2–3. Thus, a purchaser of land without actual notice may take free of restrictive covenants contained in an unrecorded contract or deed. *See also* O.C.G.A. Section 44–2–6.

■ Upon filing their respective cases under Chapter 11, debtors became debtors-in-possession and pursuant to 11 U.S.C. Section 1107, have and may exercise the rights, powers, and duties of a trustee in bankruptcy. These rights include the authority of a trustee to succeed to the legal status of a bona fide purchaser of real property under Section 544(a)(3). This section provides as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

The rights of a bona fide purchaser under this section are determined under applicable state law. *Abeny v. Cox Enterprises (In re Fulton Air Service, Inc.)*, 777 F.2d 1521, 13 Bankr.Ct. Dec. 1332 (11th Cir. 1985). Georgia law provides that a bona fide purchaser for value is protected against outstanding equitable interests in land of which he has no notice. O.C.G.A. Sections 23–1–20, 23–2–24. Under the Georgia recording statutes, even if a deed is recorded, in order to operate as constructive notice to a bona fide purchaser, the deed must not lie outside the purchaser's chain of title. *Gamble v. Brooks*, 170 Ga. 662, 153 S.E. 759 (1930). *See also* O.C.G.A. Section 44–2–2 (effect of recording on rights between parties). Further, O.C.G.A. Section 44–2–6 provides that the filing and recording of a contract to sell realty constitutes "notice of the interest of the holder of the instrument in the property described therein." Accordingly when such bona fide purchaser without notice "acquires an unqualified legal right and title to the property

---

1. There is authority in Georgia to the contrary, stating that a covenant running with the land binds a subsequent purchaser without notice. *See Wardlaw v. Southern Railway Company*, 199 Ga. 97(1), 98, 33 S.E.2d 304 (1945). This case has been questioned, however, by certain authorities, as it is based on a questionable distinction between negative covenants running with the land and restrictive agreements. 2 G. Pindar, *Georgia Real Estate Law and Procedure* Section 22–10, at 403 (3d ed. 1986). *Wardlaw* cites *Rosen v. Wolff, supra*, 152 Ga. 578, 110 S.E. 877, as authority for this rule, but in *Rosen* the party against whom enforcement of the covenant was sought, was chargeable with inquiry notice of his lessor's rights in the property subleased to him. *See Rosen*, 152 Ga. at 586, 110 S.E. 877.

purchased ... a court of equity has no jurisdiction to interfere with such vested legal right and title." *Gamble v. Brooks, supra,* 170 Ga. 662, 153 S.E. 759.

█ In this case, Wauka, Inc., as a Chapter 11 debtor-in-possession, acquired the rights and powers of a hypothetical bona fide purchaser of real property without notice pursuant to 11 U.S.C. Section 544(a)(3), and as defined under Georgia law. Because the covenant at issue was contained only in the unrecorded contract for sale of Lot 16, there was no record notice of the covenant. Cooley did not record the sales contract until December 3, 1985, some fifteen months after filing of the Chapter 11 cases, and well after the auction of Lot 15. Thus, there was no record notice of the covenant even it if survived the execution of the Lot 16 deed and closing.

Further, with bona fide purchaser status, the debtor-in-possession, Wauka, Inc., can avoid any unrecorded restrictive covenant or agreement upon its property under Section 544(a)(3) without regard to whether a bona fide purchaser exists or whether the transfer had been perfected. "Generally speaking, a purchaser or lienor without notice may rely upon the recording act for protection against covenants of his predecessor in title which do not appear of record." 2 G. Pindar, *Georgia Real Estate Law and Procedure* Section 22–10, at 403 (3rd ed. 1986); *see Hancock v. Gumm,* 151 Ga. 667, 107 S.E. 872 (1921).

Moreover, the covenant was not recited in any recorded or unrecorded instrument of conveyance of Lot 15. "[I]t is well settled that a purchaser of real estate is not bound by recitals in a deed executed by his grantor to realty not embraced in his purchase, and which therefore does not constitute a muniment in his chain of title." *Thompson v. Randall,* 173 Ga. 696, 702, 161 S.E. 377 (1931). *See also Hancock v. Gumm, supra,* 151 Ga. 667, 678, 107 S.E.2d 872.

Based on the above discussion, the court concludes that pursuant to Section 544(a)(3), debtor, Wauka, Inc., may avoid the restrictions or covenant running with the land asserted by Cooley which was unrecorded and unperfected at the time debtors' Chapter 11 cases were filed. The post-filing recording by Cooley could not and did not cure the defect as against the debtor, Wauka, Inc., as a debtor-in-possession exercising the rights of a bankruptcy trustee as a bona fide purchaser. Accordingly, debtor, Wauka, Inc., may sell Lot 15 to Sosebee free and clear of such restrictions.

The court further concludes that as a debtor-in-possession with bona fide purchaser status, debtor, Wauka, Inc., can sell the property to Sosebee free of the asserted Cooley interest although Sosebee now has actual notice of the covenant. This protection of one who buys with notice of a restriction on the use of property insures that a bona fide purchaser is not deprived of selling his property for full value, pursuant to O.C.G.A. Section 23–1–19. *See Hancock v. Gumm, supra,* 151 Ga. at 676, 107 S.E. 872; *Thompson v. Randall, supra,* 173 Ga. at 702, 161 S.E. 377.

The evidence shows that the Sosebee bid of $100,000 was made pursuant to a court authorized sale, duly accepted by the debtor and submitted to the court for approval. Without authorization of the court, Mr. Sosebee could not and has not withdrawn his bid.

## CONCLUSION

Based upon the above discussion the court concludes that in the view of the retention of general jurisdiction of debtors and their property in Article V of their confirmed plans of reorganization, jurisdiction of debtors and Lot 15 has been continuously and exclusively vested in this court from the date of the case filings to the present. Both the Bankruptcy Code and the confirmed plans require that this court administer this property for the benefit of creditors of these debtors and their respective estates. Accordingly, this court concludes that the Order of September 6, 1985, by Judge Robinson, did not dispose of nor is it res judicata on the determination of issues, actions, controversies, disputes, or conflicts relating to this property or title to

this property arising in the court's administration of the estates and the debtors' confirmed plans. To the extent the September 6, 1985 Order may be considered inconsistent with this Order, the September 6, 1985 Order is specifically amended by the terms and provisions of this Order.

The court further concludes that the claims of Counte Cooley must be denied for the following reasons that (1) Cooley is barred under the doctrine of res judicata from raising and asserting these issues because they could have and should have been litigated in connection with his original objections and response to sale of Lot 15 resulting in Judge Norton's Orders of March 15 and 30, 1984; (2) even if res judicata did not apply in this case, the provisions of the July 2, 1981 sales contract merged into and did not survive the closing and consummation of the sale of Lot 16 to Cooley, except as contained in the July 27, 1981 warranty deed to Lot 16; and (3) if such a restrictive interest had survived, this interest may be avoided by debtor, Wauka, Inc., as debtor-in-possession, exercising the rights and powers of a trustee with bona fide purchaser status pursuant to 11 U.S.C. Section 544(a)(3).

Further, even though Sosebee had notice of the restrictive covenant at the time of purchase, and though this interest has now been recorded, the status of Wauka, Inc., as debtor-in-possession vested with bona fide purchaser status, was not effected. In addition, neither this notice nor the subsequent recording operated to reinstate or validate the covenant as between these parties.

In accordance with the findings of fact and conclusions of law set forth above, it is hereby

ORDERED that the court hereby approves the bid of Donald Sosebee of $100,-000.00, made pursuant to a court authorized sale and accepted by the debtor subject to court approval, and Mr. Sosebee is DIRECTED to specifically perform his bid and pay the debtor, Wauka, Inc., the purchase price of $100,000 upon delivery by said debtor of an appropriate deed in accordance with this Order; and it is

ORDERED that debtor, Wauka, Inc., is authorized to prepare and to deliver to Sosebee, at an appropriate closing date, a deed to Lot 15, Wauka Mountain Subdivision, free and clear of all liens and encumbrances, including all unrecorded or unperfected restrictions, except those restrictions that were of record on the date of the filing of the Chapter 11 case of the debtor, Wauka, Inc., with such closing to be held within 45 days from the date this Order becomes a final Order; and it is

ORDERED that the court reserves jurisdiction of the property and the parties for all purposes until performance of the bid and consummation of the sale is completed; and it is

ORDERED that the claims of defendant, Counte Cooley, of a restrictive covenant running with the land as to Lot 15, as more particularly described in his contract for sale of Lot 16, are DENIED and such covenant is determined to be void and unenforceable against the debtors or their transferees in title and all objections to the sale of Lot 15 are DENIED.

IT IS SO ORDERED.